# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

WAFFLE HOUSE, INC.,

     Plaintiff,

         v.

NATIONAL LABOR RELATIONS
BOARD, a federal administrative agency,
JENNIFER ABRUZZO, in her official
capacity as the General Counsel of the
National Labor Relations Board, LAUREN
M. McFERRAN, in her official capacity as
the Chairman of the National Labor
Relations Board, MARVIN E. KAPLAN,
GWYNNE A. WILCOX, and DAVID M.
PROUTY, in their official capacities as
Board Members of the National Labor
Relations Board, and JANE DOE in his
official capacity as an Administrative Law
Judge of the National Labor Relations
Board,

     Defendants.

Civil Action No. 3:24-cv-06751

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Waffle House, Inc. ("Waffle House") hereby files this Memorandum of Law in Support of its Motion for a Preliminary Injunction ("Motion"). Waffle House's Motion is necessary to prevent the National Labor Relations Board and its officials (collectively, the "NLRB") from subjecting Waffle House to a patently unconstitutional adjudicatory process. That process is overseen by executive officers acting without sufficient oversight by actual elected officials. Moreover, the process violates Waffle House's rights under the Fifth and Seventh Amendments to the Constitution, as well as basic concepts of fairness and due process.

1

# I.    INTRODUCTION

The NLRB has accused Waffle House of having violated federal law that cannot be found in any meaningful detail in any statute passed by Congress. Nor can the law be found in any regulation promulgated and published by an appropriately authorized administrative agency. Rather, the laws Waffle House is alleged to have violated are based upon quasi-judicial fiats issued by the Members of the NLRB (the "Board Members"); fiats that have shifted over time without any actual change in the statutory text the Board Members purport to be interpreting, but rather according to the whims of the Board Members. These whims have resulted in sea changes in the rules with which the Board expects companies such as Waffle House to comply. The Board Members determine not only the substantive law to which employers will be subjected, but also the remedies that are appropriately awarded. They make this determination at both a macro (i.e. determining what remedies the National Labor Relations Act (the "Act") allows as a matter of law and which the NLRB should pursue as a matter of policy) and a micro (i.e. making the adjudicatory determination of what remedies are appropriate in a specific case) level.

Moreover, the process by which the NLRB adjudicates whether companies like Waffle House have complied with its fiats is riddled with Constitutional infirmities. At the most basic level, an agency of the federal government that attempts to deprive a person of liberty or property – both of which are very much at issue in the claims the Board is asserting against Waffle House – is subject to Constitutional limitations and must be conducted before an Article III court and ultimately determined by a jury. The officials carrying out the executive functions of the agency must be properly subject to oversight and control by the President. The Board Members and the Administrative Law Judges ("ALJs") who exercise these executive functions act independently and without the appropriate level of overnight. Where, as here, the agency pursues a legal claim,

the Seventh Amendment requires that it must do so in front of a jury. Even if a jury trial is not required, the Fifth Amendment requires that basic guarantees of due process be honored. Finally, the agency must act in such a way that honors the constitutionally-mandated separation of powers. The NLRB, however, unconstitutionally comingles executive, legislative and judicial functions.

In short, unless the NLRB's threatened proceeding is enjoined, Waffle House will be subject to an unconstitutional process. Once the harm of a constitutional violation is inflicted, it cannot be remedied. Immediate injunctive relief is therefore required.

## II.     BACKGROUND

### A.  Waffle House and Its Business Operations.

Waffle House is a 24-hour sit-down restaurant with approximately 1,900 locations (or "Units") in 25 States. Waffle House has become a southern icon by serving good food fast. Its menu features an array of selections for breakfast, lunch and dinner.

### B.  The Underlying Events Giving Rise to the Board's Complaint Against Waffle House.

The events giving rise to this proceeding arise out of a series of incidents that began on or around July 1, 2023. On that date, approximately twenty (20) individuals, none of whom were Waffle House employees, stormed into Waffle House's Unit 1470, located in Columbia, South Carolina, disrupting the Unit's operations and customer service efforts. Over the next several weeks, various Waffle House managers met with the employees to follow up on the issues that had been raised.

### C.  The Initiating of Legal Proceedings Against Waffle House.

Subsequent to the events described above, the Service Employee International Union ("SEIU") filed an unfair labor practices charge ("ULP") with the Board alleging that Waffle House's response to the incident at Unit 1470 and the concerns raised by its employees violated

the National Labor Relations Act. Over the ensuing months, the SEIU twice amended the ULP to include additional allegations, including that Waffle House issued a retaliatory disciplinary warning to one of the employees at Unit 1470. (*See Declaration of Matthew D. Crawford*, ⁋⁋ 4-5 __, submitted herewith). Waffle House submitted a Statement of Position addressing each of the allegations raised in the ULPs and demonstrating that its conduct was consistent with applicable law. . Id., ⁋ 6.

On or about August 30, 2024, a representative of the Board's Regional Director contacted Waffle House's counsel and informed him that the Regional Director had found merit to some of the allegations raised in the ULPs. Id., ⁋ 7

Subsequently, on September 30, 2024, the Board served Waffle House with a Complaint and Notice of Hearing ("NOH"). The NOH purports to hale Waffle House into a proceeding to be overseen by an as-yet unnamed ALJ, commencing on February 11, 2025. . Id., ⁋ 8 If successful in its prosecution of the allegations raised in the NOH, the Board seeks, *inter alia*, to compel Waffle House to engage in certain Board-mandated speech and to compel Waffle House managers and supervisors to submit to Board-conducted "training." The NOH also states that the "General Counsel seeks all other relief as may be just and proper to remedy the unfair labor practices alleged," providing no indication of what such remedies may be. *Id.*, ⁋ 9.

### III.    ARGUMENT AND CITATION OF AUTHORITY

#### A.  The Standard for Injunctive Relief.

Waffle House's request for injunctive relief is subject to a four part analysis. This Court must consider: (1) whether Waffle House is likely to succeed on the merits of its claims; (2) whether Waffle House will suffer irreparable injury if the relief it seeks is not granted; (3) whether and to what extent the Board will be injured if the injunction is granted; and (4) whether the public

interest favors an injunction. *Leaders of a Beautiful Struggle v. Baltimore Police Dept.*, 2 F.4th 330, 339 (4th Cir. 2021).

1. **There is a High Likelihood That Waffle House Will Succeed On the Merits of its Claims.**

   a. **The Members of the Board are Unconstitutionally Insulated From Removal By the President.**

The Executive power of the United States government is vested exclusively in the President. *See Constitution, Article II Section 1 Clause 1.* Courts recognize, of course, that the scope of the modern federal government is such that no one person can personally fulfill that role and that the Constitution permits and contemplates the appointment of executive officers to assist the President in fulfilling his executive role. *See Seilia Law, LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 203-04 (2020). But "[t]hese lesser officers must remain accountable to the President, whose authority they wield." *Id.* at 214. This oversight authority must necessarily include the power to remove those officials who would act contrary to the President's authority. *Selia Law LLC v. CFPB*, 591 U.S. 197, 213 (2020); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010).

There can be little doubt that the Board Members exercise significant executive authority that requires them to be subject to Presidential oversight:

- They can engage in formal rulemaking under the Administrative Procedure Act. *See* 29 U.S.C. § 156.

- They regularly make new policy governing nation's workplaces via adjudicatory decision-making, often doing so in ways that reflect partisan political preferences. *See, e.g., Stericycle, Inc.*, 372 NLRB No. 113 (2023); *Boeing Company*, 365 NLRB No. 154 (2017); and *Lutheran Heritage Village-Livonia* (343 NLRB 646 (2004) (demonstrating vacillating

adjudicatory rulemaking regarding standard to be applied to employer work rules; *E.I. DuPont de Nemours*, 364 NLRB, No. 113 (2016); *Raytheon Network Centric Systems*, 365 NLRB No. 161, 16 (2017); *Wendt Corp.*, 372 NLRB No. 135 (2023) (similarly vacillating adjudicatory rulemaking regarding an employer's ability to deviate from past practices); *Chamber of Com. of U.S. v. NLRB*, No. 6:23-CV-00553, 2024 WL 1203056, at *4 (E.D. Tex. Mar. 18, 2024) (noting that the Board has changed its "joint employer standard four times in just ten years"); *see also* Amy Semet, *Political Decision-Making at the National Labor Relations Board; An Empirical Examination of the Board's Unfair Labor Practice Decisions through the Clinton and Bush II Years*, 37 Berkley J. Emp. & Lab. L. 223,227 (2016).

- They determine whether to initiate federal court proceedings to enjoin certain violations of the National Labor Relations Act. 29 U.S.C. § 160(j).

Despite their clear exercise of core executive power, Board Members may only be removed "for neglect of duty of malfeasance." 29 U.S.C. § 153(a). "[F]or no other cause" – not negligence, not political disagreement with the President – may they be removed. *Id.*[1] This protection from Presidential oversight is unconstitutional. *See, e.g. Collins v. Yellen*, 594 U.S. 220, 256 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds negligent and inefficient.").

---

[1] Because Board Members exercise clear executive power, the Supreme Court's holding in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) is inapposite. In *Humphrey's Executor*, the Supreme Court recognized a narrow exception to the requirement that executive officers be subject to the President's removal authority for members of "multimember expert agencies that do not wield substantial economic power." *Selia Law*, 591 U.S. at 218. In *Selia*, the Supreme Court recognized that this narrow exception did not apply to the Director of the Consumer Financial Protection Bureau, as that official exercised significant executive authority. *Id.* This same reasoning applies to the Board's Members.

### b. The NLRB's ALJs Are Likewise Unconstitutionally Insulated From Presidential Oversight.

In addition to the Board Members themselves, the NLRB's ALJs exercise sufficient executive functions that they must be subject to an appropriate level of oversight by the President under these principles. In *Lucia v. Security and Exchange Commission*, 588 U.S. 237 (2018), the Supreme Court was clear that these oversight principles apply with full force to the Security and Exchange Commission's ALJs. Among other things, the Court noted that SEC ALJs "have all the authority needed to ensure fair and orderly adversarial hearings," "take testimony," "receive evidence and examine witnesses at hearings", "administer oaths, rule on motions, and generally regulate the course of a hearing, as well as the conduct of parties and counsel," "rule on the admissibility of evidence," "issue decisions containing factual findings, legal conclusions, and appropriate remedies." *Id.* at 248-49 (internal quotations, citations and alterations omitted). The Board's ALJs likewise exercise these functions. *See generally* NLRB Division of Judges Bench Book, available at https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/2024-bench-book-updated.pdf.

As such, the NLRB's ALJs must be considered "inferior officers" who are required to be subject to appropriate oversight by the President. *See Space Exploration Technolo-Gies Corp. v. National Labor Relations Board*, 2024 WL 3512082 (N.D. Tex. July 23, 2024) (holding that, like the SEC's ALJs, the NLRB's ALJs "are inferior officers who have substantial authority in agency investigations and enforcement actions"). Indeed, the NLRB itself has recognized that "Board [ALJ's], like SEC [ALJ's] are inferior officers" under the Constitution. *Westrock Services, Inc.*, 366 NLRB No. 156 at 1 (2018).

Rather than be subject to the appropriate level of oversight by the President, the NLRB's ALJs have three layers of insulation from appropriate Presidential oversight. They may be removed

from their office only "for good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521. This process is to be initiated by the Board's Members, who – as discussed above – are themselves unconstitutionally protected from Presidential oversight. Finally, the members of the Merit Systems Protection Board ("MSPB") who determine whether to remove an ALJ from office are not answerable to the President in any meaningful way, as they are removable only upon a showing of "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d); *see also Space Ex*, 2024 WL 3512082 at * 5 (noting that the legislative history of the Civil Service Act reflects that it was intended to "confer upon MSPB members a tenure akin to that of the federal judiciary").[2]

### c. Waffle House Is Entitled to A Jury Trial for the Claims Brought In the NOH.

Waffle House is also likely to prevail on the merits of its claim that it is entitled to a jury trial on the claims raised in the NOH. "The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of that right' has always been and 'should be scrutinized with the utmost care.'" *Securities and Exchange Commission v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (*quoting Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). The right is an expansive one. As the Supreme Court recently explained in *Jarkesy*,

---

[2] Thus far, no Court of Appeals has ruled directly on whether the NLRB's ALJs are unconstitutionally insulated from removal. For its part, the Fourth Circuit has noted that the Courts of Appeal are split on the issue of whether the protections of other agencies' ALJ's, subject to insulations from removal similar to those enjoyed by the NLRB's ALJ's, are constitutional. *See K&R Contractors, LLC v. Keene*, 86 F.4th 135, 148 (4th Cir. 2023). The *Keene* court, however, declined to address the issue, on the grounds that the procedural posture of that case meant that the constitutional question need not be answered. The *Keene* court was able to avoid the constitutional issue because the proceeding had already taken place. *Id.* Here, however, the proceeding has yet to occur. The well-established principle that being subject to a proceeding before an unconstitutionally insulated officer constitutes an irreparable harm, discussed below, distinguishes *Keene* from this case.

"the right is not limited to the 'common-law forms of action recognized' when the Seventh Amendment was ratified." *Id.* at 2128 (*quoting Curtis v. Loether*, 415 U.S. 189, 193 (1974)). Rather, the right "'embraces all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume.'" *Id.* (*quoting Parsons v. Bedford*, 3 Pet. 433, 447 (1830). That includes statutory claims that are legal in nature. *Id*. Either the nature of the claim or the remedy sought can bring a claim under the Seventh Amendment's ambit. *Id.* at 2129.

With regards to remedy, the Supreme Court in *Jarkesy* made clear that the critical element of the analysis is the government's purpose in seeking a particular remedy: "While monetary relief can be legal or equitable, money damages are the prototypical common law remedy. . . What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" *Id.* at 2129 (*quoting Tull v. United States*, 481 U.S. 412, 422 (1987). Whatever arguments the NLRB may try to make in this proceeding, the Board Members' recent pronouncement in *Noah's Ark Processors, LLC*, 372 NLRB No. 80 (2023), gave away the game. There, the Board wrote: "[C]ertain remedies, when ordered in combination, may *encourage compliance with the Act* and offer better protection of employees' Section 7 rights." *Id.* (emphasis added). This admission brings the NLRB's proceedings under the ambit of *Jarkesy's* jury requirement.

To the extent the NLRB argues that it is not seeking to punish or deter Waffle House in this particular proceeding, that argument is likewise unavailing. To be sure, the NOH is coy about the relief sought. While the enumerated "Remedies" section of the NOH do not call for any monetary relief or traditional common law damages, the NOH broadly reserves the General Counsel's purported right to seek "all other relief as may be just and proper to remedy the unfair labor practices alleged," the expansive kinds of remedies that would implicate the Seventh Amendment

may well became an issue in this matter.[3] Indeed, the General Counsel has been open and clear about her agency's intent to seek an ever-growing suite of damages for unfair labor practice charges. *See, e.g., NLRB GC Memo 25-1* (October 7, 2024) (instructing Regional Directors to seek additional penalties to prevent the "pernicious harms" that allegedly arise from employee non-compete agreements, with such penalties to include pay differentials for employees supposedly subject to an unlawful non-compete agreement); *NLRB GC Memo 21-06* (September 8, 2021) (instructing Regional Directors to seek additional penalties in unlawful discharge cases, including "compensation for health care expenses that an employee may incur as a result of an unlawful termination of health insurance, or compensation for credit card late fees incurred or for loss of a home or a car that an employee suffers as a result of an unlawful discharge" and in interference with bargaining rights cases, including a union's recovery of "organizational costs"). The Board Members themselves have been receptive to the General Counsel's seemingly limitless damages theory, even going beyond it in some circumstances. In *Noah's Ark*, the Board Members ordered expanded remedies even where the General Counsel had not sought them. *Id.* at 4 ("We have broad discretion to exercise our remedial authority under . . . the Act even where no party has . . . requested additional forms of relief."). At least one Court of Appeals has criticized the Board for its expansion of the remedies it seeks. *Thryv, Inc. v. National Labor Relations Board*, 102 F.4th 727, 737 (5th Cir. 2024) (characterizing the Board's order to award "all losses incurred as a direct and foreseeable result of the [unfair labor practice] as a "novel, consequential-damages like labor law remedy").

---

[3] To be clear, Waffle House's position is that no monetary damages of any kind should be awarded in this matter, both because it has not violated the Act and because the National Labor Relations Act does not permit damages in under the alleged facts of this case.

Moreover, that the government is seeking traditional legal *relief* is only one avenue to the Seventh Amendment right. The *nature* of the claim pursued by the government can also give rise to a right to a jury trial. In the action initiated by the NOH, the Board essentially alleges that Waffle House employees have a right to engage in certain protected concerted activities and that Waffle House interfered with that right. The Supreme Court has found similar statutory actions to constitute legal claims subject to the protections of the Seventh Amendment. *See, e.g., City of Monterey v. Del Monte Dunes at Monterey, LTD*, 526 U.S. 687, 710 (1999) ("[T]here can be no doubt that claims brough pursuant to Section 1983 sound in tort. Just as common-law tort actions provide redress for interference with protected personal or property interests, Section 1983 provides relief for invasions of rights protected under federal law."); *Curtis v. Loether*, 415 U.S. 189, 195 (1974) ("We think it is clear that a damages action under Section 812 is an action to enforce 'legal rights' within the meaning of our Seventh Amendment decisions. A damages action under the statute sounds basically in tort.").

### d. The Board's Procedures Lack Basic Due Process Protections.

Even if the Seventh Amendment right to jury trial does not directly apply, the Board is still subject to the general due process protections of the Fifth Amendment. *See, e.g., Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("[P]rocedural due process is applicable to the adjudicative administrative proceeding involving the differing rules of fair play, which through the years, have become associated with different types of proceedings."); *see also Jarkesy*, 114 Sup. Ct. at 2141 (Gorsuch, concurring) ("The shift from a court to an ALJ didn't just deprive Mr. Jarkesy of the right to an independent judge and jury. He also lost many of the procedural protections our courts supply in cases where a person's life, liberty or property is at stake.").

The NLRB's most basic violation of due process stems from its disregard of foundational separation of powers principles. Any "exercise of government power must be consistent with the design and requirements of the Constitution, including those provisions relating to the separation of powers." *Department of Transportation v. Association of American Railroads*, 573 U.S. 43, 54 (2015). The separation of powers is a staple of basic civics education: Congress (the legislature) makes the law; the President (the executive) enforces the law; and the courts (the judiciary) interpret the law.

As discussed in detail above, the NLRB is (or is at least supposed to be) an executive agency tasked with the enforcement of the National Labor Relations Act. 29 U.S.C. § 153. But, as likewise discussed in detail above, the NLRB has taken for itself a fundamentally judicial task of overseeing the litigation of parties' private rights. In addition, the Board's Members have claimed for themselves the fundamentally judicial task of interpreting the Act, a task that, in light of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) they can no longer claim is part of a legitimate exercise of executive power. *Id.* at 2257-2258 (reiterating that the interpretation of the law is exclusively the role of the judiciary); *Id.* at 2274 (Thomas, J, concurring) (noting that executive agencies' issuance of purportedly binding regulations under the guise of interpreting an ambiguous statute is an unconstitutional exercise of both judicial and legislative power).

In addition to this fundamental constitutional defect, the Board's proceedings lack many of the elements that have traditionally come to be associated with just cause. The Board is unapologetic that its processes do not allow for prehearing discovery. *See* NLRB Case Handling Manual, Sect. 10292.4 ("The Federal Rules of Civil Procedure providing for compulsory pretrial discovery have been held not applicable to Board proceedings. Any attempt to use such discovery

should be resisted.").[4] However, the Board does reserve for itself and its own agents Board subpoena powers, *Id.* at Sect. 11770-11808, going so far as to instruct its agents that they are "entitled to retain all relevant information requested, as long as it does not impose an 'undue burden' on the recipient," with the onus of demonstrating "undue burden" resting on the target of the subpoena. For good measure, the Board stresses that this onus is "not easily met." *Id.* at 11796.

By contrast, a non-Board litigant seeking to make use of the Board's own subpoena processes to defend itself against the Board's prosecution runs the risk of being charged with and prosecuted for additional unfair labor practices. *See, e.g. Tracy Auto, LP*, 372 NLRB No. 101 at 7 (2023) (finding that employer committed an independent unfair labor practice by issuing a subpoena for communications forming the basis of pending unfair labor practice charges, and noting "it is difficult to imagine a situation in which such a subpoena could be permitted").[5] The NLRB should not be permitted to so tip the scales in its favor.

Equally fundamental to due process is the right to have a case determined by a neutral adjudicator—that is, "a fair trial in a fair tribunal." *Federal Energy Regulatory Commission v. Powhatan Energy Fund, LLC*, 286 F. Supp. 3d. 751, 768 (E.D. Va. 2017) ("The basic due process requirement of a 'fair trial in a fair tribunal applies to administrative agencies as well as to courts.")

---

[4] Waffle House is aware of the Supreme Court's discussion of the Board's rationale for denying prehearing discovery in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 239 (1978) and recognizes that said decision has not been explicitly overturned. Nevertheless, Waffle House reserves its position that *Robbins* was wrongly decided and that the Board's manipulation of its prehearing procedures raise due process concerns even in light of *Robbins*.

[5] The limitations on a party's ability to prepare its defense imposed by the Board are even more draconian than those that gave Justices Gorsuch and Thomas concern in their *Jarkesy* concurrence. In the SEC proceedings at issue in that case, ALJ's enjoyed far more latitude to issue subpoenas, and parties could take limited depositions prior to hearing. *Jarkesy*, 144 Sup. Ct. at 2141 (Gorsuch, J., concurring).

(*quoting Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975) (internal marks and citations omitted)).

Justice Black put it well in *In re Murchison*:

> Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that [e]very procedure which would offer a possible temptation to the average man as a judge not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way justice must satisfy the appearance of justice.

*In re Murchison*, 349 U.S. 133, 136 (1955) (internal quotations and citations omitted).

The Board's attempt to prosecute this matter before an ALJ suffers from the same inherent conflict of interest as any proceeding before an agency's in-house ALJ – that the ALJ ultimately is a part of, and paid by, the same agency bringing the proceedings. *Jarkesy*, 144 Sup. Ct. at 2141 (Gorsuch, J., concurring) ("ALJ's . . . remain servants of the same master [as the lawyers who pursue charges on behalf of the agency]—the very agency tasked with prosecuting individuals like Mr. Jalesky. This close relationship, as others have long recognized, can make it extremely difficult, if not impossible, for the ALJ to convey the image of being an impartial factfinder.") (internal citations and quotations omitted). However, there is a more specific conflict of interest at play here. Two of the Board's Members – i.e. two members of the panel that will ultimately decide the outcome of this matter if it is allowed to proceed before the Board – were, immediately prior to being appointed to the Board, high-ranking officials of the SEIU. Member Prouty was General Counsel of SEIU Local 32BJ. *See https://www.nlrb.gov/bio/david-m-prouty.* Member Wilcox was Associate General Counsel of SEIU Local 1199. https://www.nlrb.gov/bio/gwynne-a-wilcox.

The SEIU is the Charging Party that initiated this matter, and successful prosecution of the Charge would undoubtedly be in the SEIU's best interest. Notwithstanding this clear conflict of interest, Members Prouty and Wilcox have, without explanation, refused to recuse themselves in previous cases involving the SEIU. *See Slip Op. in Case No. 21-CA-294571*, fn. 1 ("The Respondents assert that Members Prouty and Wilcox should recuse themselves, claiming that their 'past, present and perceived relationship' with the Service Employees International Union (SEIU) and its affiliate, Charging Party Workers United, creates a conflict of interest. Members Prouty and Wilcox have determined, in consultation with the Board's Designated Agency Ethics Official, that there is no basis to recuse themselves from the adjudication of this case.").

Simply put, Waffle House will not receive a "fair trial in a fair tribunal" if the NLRB is allowed to proceed with the NOH.

### 2. Waffle House Will Suffer Irreparable Injury If An Injunction Does Not Issue.

That Waffle House will suffer irreparable injury if an injunction does not issue is established by binding Supreme Court precedent. The case of *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023) involved claims that "agencies' administrative law judges (ALJs) are insufficiently accountable to the President, in violation of separate-of-powers principles." *Id.* at 180. The Court unanimously held that being forced to appear in a proceeding before an unconstitutionally insulated ALJ is a "here-and-now injury" that cannot be undone. *Id.* at 191. The Court's ruling was not surprising. It has long been established that deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022). see 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice, and Procedure § 2948.1 at 160-161 (2d ed.

1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

### 3. The Balance of Harms to the Parties and the Public Favors the Issuance of An Injunction.

The remaining two factors the Court must weigh in deciding whether to issue an injunction also favor the issuance of the injunction. Indeed, where the government is a defendant, these two factors are weighed together. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party."); *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (same). Defendants can hardly be said to have an interest in an unconstitutional adjudication process, and "the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle v. Baltimore Police Dept.*, 2 F.4th 330, 346 (4th Cir. 2021).

## IV.    CONCLUSION

For the foregoing reasons, Waffle House respectfully requests that its Motion for a Preliminary Injunction be granted. The NLRB is threatening to subject Waffle House to an administrative proceeding overseen by officers who are insufficiently accountable to the President, that violates Waffle House's Seventh Amendment right to a jury trial, and which violates the Fifth Amendment's guarantees of due process. If Waffle House is subjected to this process, it will suffer a harm which will not be able to be remedied after-the-fact. Enjoining the threatened proceedings would also further the public's interest in the enforcement of Constitutional rights.

**E. ALAN MILLER, P.C.**

*/s/ E. Alan Miller*
E. Alan Miller (ID# 7488)
2573 Apple Valley Road, NE
Atlanta, GA 30319
(404) 909-8117
Telephone: 404-909-8117
Facsimile: 404-909-8120
eamiller@martensonlaw.com

**MARTENSON HASBROUCK & SIMON LLP**

Matthew D. Crawford
Georgia Bar No. 190109
(*pro hac vice* motion forthcoming)
2573 Apple Valley Road NE Atlanta, Georgia 30319
Telephone: 404-909-8101
Facsimile: 404-909-8120
mcrawford@martensonlaw.com

*Attorneys for Waffle House, Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2024, I electronically filed the foregoing document with the

court and also served it via U.S. Mail express delivery to the persons listed below:

**National Labor Relations Board**
**c/o Jennifer Abruzzo,**
**General Counsel of the National Labor Relations Board**
**1015 Half Street SE**
**Washington, D.C. 20570-0001**

**Jennifer Abruzzo,**
**in her official capacity as General Counsel of the National Labor Relations Board**
**1015 Half Street SE**
**Washington, D.C. 20570-0001**

**Lauren M. McFerran,**
**in her official capacity as the Chairperson of the National Labor Relations Board**
**1015 Half Street SE**
**Washington, D.C. 20570-0001**

**Marvin E. Kaplan,**
**in his official capacity as a Board Member of the National Labor Relations Board**
**1015 Half Street SE**
**Washington, D.C. 20570-0001**

**Gwynne A. Wilcox,**
**in her official capacity as a Board Member of the National Labor Relations Board**
**1015 Half Street SE**
**Washington, D.C. 20570-0001**

**David M. Prouty,**
**in his official capacity as a Board Member of the National Labor Relations Board**
**1015 Half Street SE**
**Washington, D.C. 20570-0001**

**The Honorable Merrick B. Garland,**
**Attorney General of the United States**
**U.S. Department of Justice**
**950 Pennsylvania Avenue, NW**
**Washington, DC 20530-0001**

**The Honorable Adair F. Boroughs,**
**United States Attorney for the District of South Carolina**
**Wells Fargo Building**
**1441 Main Street, Suite 500**
**Columbia, SC 29201**

**E. ALAN MILLER, P.C.**

*/s/ E. Alan Miller*
E. Alan Miller (ID# 7488)
2573 Apple Valley Road, NE
Atlanta, GA 30319
(404) 909-8117
Telephone: 404-909-8117
Facsimile: 404-909-8120
eamiller@martensonlaw.com

**MARTENSON HASBROUCK & SIMON LLP**

Matthew D. Crawford
Georgia Bar No. 190109
(*pro hac vice* motion forthcoming)
2573 Apple Valley Road NE Atlanta, Georgia 30319
Telephone: 404-909-8101
Facsimile: 404-909-8120
mcrawford@martensonlaw.com

*Attorneys for Waffle House, Inc.*