**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| WAFFLE HOUSE, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, *et al.* <br><br> *Defendants.* | Civil Action No. 3:24-cv-06751-MGL |

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR**
**PRELIMINARY INJUNCTION**

Plaintiff Waffle House, Inc. (Waffle House) is not entitled to a preliminary injunction halting the congressionally mandated procedure for resolving labor disputes, as it has not satisfied any of the requirements for obtaining this extraordinary relief.

**BACKGROUND**

**I.     Statutory and Regulatory Background**

Defendant National Labor Relations Board, *et al.* (collectively NLRB)[1] is the exclusive federal agency designated to protect employee rights under the National Labor Relations Act (NLRA or Act), 29 U.S.C. § 151, *et seq.*, to form and join unions, to engage in concerted activity for mutual aid and protection, or to refrain from such activities. 29 U.S.C. § 157. One of the key functions of the Agency is its role in processing allegations that an employer or union has committed an unfair labor practice (ULP). *Id.* § 160. Such allegations arise from charges filed by members of the public; formal proceedings do not commence unless and until the NLRB's

---

[1] Waffle House also names certain NLRB officials as Defendants. One of them, Lauren M. McFerran, is no longer an NLRB official because her term ended on December 16, 2024.

General Counsel, or her delegate, finds merit to the charge and issues a complaint, *id.* § 160(b), usually accompanied by a notice of hearing. Although such hearings may take place "before the Board or a member thereof," in practice they are almost always assigned to "a designated agent"—that is, an administrative law judge (ALJ). *Id.*

The NLRB's ALJs are appointed in accordance with the Civil Service Reform Act (5 U.S.C. § 3105) and the NLRA (29 U.S.C. § 154(a)). *See WestRock Servs., Inc.* 366 NLRB No. 157, 2018 WL 3738342, at *1–3 (2018). Once an ALJ issues a recommended decision, parties may file "exceptions" on any contested issue, asking the Agency's Board to rule upon the matter. 29 C.F.R. § 102.46(a). In doing so, the Board is not bound to accept either the ALJ's findings of fact or conclusions of law. 29 U.S.C. § 160(c). And the Board has explicit statutory authorization to take additional evidence upon notice to the parties. *Id.* If no exceptions are filed, the Board issues a pro-forma order automatically adopting the ALJ's findings, conclusions, and order, *id.*, but this disposition is not precedential. *N.Y. Paving, Inc.*, 371 NLRB No. 139, 2022 WL 4546315, at *6 n.11 (2022), *enforced per curiam*, No. 22-1266, 2023 WL 7544999 (D.C. Cir. Nov. 14, 2023).

The Board consists of five members who are appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(a). Board members serve staggered terms of up to five years and may only be removed "for neglect of duty or malfeasance in office." *Id.* The Board issues final decisions in ULP cases under Section 10(c), 29 U.S.C. § 160(c), conducts and certifies the outcome of representation elections under Section 9, *id.* § 159, and promulgates rules and regulations under Section 6, *id.* § 156.

Under Section 10(c) of the NLRA, the Board is given "broad discretionary" authority to remedy ULPs by ordering "such affirmative action . . . as will effectuate the policies of this Act."

*Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 215–16 (1964) (citing 29 U.S.C. § 160(c)). The Board has traditionally sought to "restor[e] the situation, as nearly as possible, to that which would have obtained but for the [ULP]." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941). Thus, the Board has often—with court approval—required parties who commit ULPs to not only pay back wages, but also to compensate employees for other foreseeable pecuniary losses attributable to a party's unlawful conduct. *Thryv, Inc.,* 372 NLRB No. 22, 2022 WL 17974951, at *11–13 (2022) (collecting cases), *enf. denied on other grounds*, 102 F.4th 727 (5th Cir. 2024). Orders of the Board, however, are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions. *Id.* § 160(e). Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA. *Id.* § 160(f). Only upon enforcement by a court of appeals does a Board order become fully effective against a respondent. *Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1159 (6th Cir. 1996) ("An NLRB remedial order is not self-executing, and the respondent can violate it with impunity until a court of appeals issues an order enforcing it.").

The process for removing ALJs is defined by statute. With a handful of listed exceptions, "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board ("MSPB") on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). Removing an NLRB ALJ requires two steps: (1) the Board must bring an action to remove an ALJ; and (2) the MSPB must determine that good cause for removal has been established. The MSPB has applied "good cause" to remove or suspend ALJs for a variety of reasons. *See, e.g.*, *HHS v. Jarboe*, 2023 MSPB 22, ¶ 3 (Aug. 2, 2023) ("failure to follow instructions"); *In re*

*Chocallo*, 1 MSPR 605, 609–10 (1980) ("disobedience," "lack of judicial temperament," "bias," "incompetence"). MSPB members themselves "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

## II.     Factual and Procedural Background

On July 10, 2023, Service Employees International Union ("the Union") filed a ULP charge against Waffle House with Region 10 of the NLRB, alleging that Waffle House committed various violations of the NLRA at one of its stores in Columbia, South Carolina. ECF 14-3. The charge, docketed as NLRB Case 10-CA-321421, was amended on September 26, 2023, and again on June 4, 2024. ECF 14-4, 14-5. On September 30, 2024, following Region 10's investigation, during which Waffle House and all parties had an opportunity to submit evidence and legal analysis, the Region issued an administrative Complaint and Notice of Hearing in Case 10-CA-321421, scheduling a hearing for February 11, 2025, before an ALJ. ECF 14-6 at 8. The Region's complaint alleges that several Waffle House employees, with the support of the Union, engaged in protected concerted and/or union activities, by delivering a petition to Waffle House management outlining employees' concerns about working conditions at the store and by engaging in a three-day strike. ECF 14-6, ¶¶ 6, 8. The Complaint further alleges that in response to employees' alleged protected concerted and union activity, Waffle House, through its managers and supervisors, engaged in a series of ULPs, including: cornering and interrogating employees; threatening employees in various ways; accusing employees of slander; and retaliating against one particular employee by issuing her a written disciplinary warning. ECF 14-6, ¶¶ 7–11. Waffle House filed its Answer to the administrative Complaint on October 15, 2024. *See* Case 10-CA-321421, www.nlrb.gov/case/10-CA-321421 (last visited on Dec. 19, 2024).

On November 21, 2024, Waffle House filed its Complaint for Declaratory and Injunctive Relief [ECF 1 (Compl.)], alleging and seeking an order declaring, as follows: (1) the NLRB's ALJs and the members of the Board are unconstitutionally insulated against removal; (2) the NLRB proceeding deprives Waffle House of its Seventh Amendment jury-trial right; and (3) the Board's functions and internal procedures regarding pre-hearing discovery and the recusal of Board members deny Waffle House due process under the Fifth Amendment. *Id.* The next day, Waffle House moved for preliminary injunctive relief to enjoin the NLRB proceeding in Case 10-CA-321421. ECF 14 (Mot.); ECF 14-1 (Mem.).

## LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). The movant must make "a clear showing" that it is "entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), by establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam) (equities and public interest may overcome other two factors in constitutional cases). A preliminary injunction "involv[es] the exercise of very far-reaching power" and is "to be granted only sparingly and in limited circumstances," only if the plaintiff carries its "burden of establishing" each of the factors. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811–12 (4th Cir. 1991) (cleaned up).

**ARGUMENT**

**I.**    **Waffle House is unlikely to succeed on the merits.**

    *A.*    *Congress has jurisdictionally barred injunctive remedies in labor-dispute cases.*

Absent a statutory exception, Congress has jurisdictionally barred all "court[s] of the United States" from issuing injunctions "in any case involving or growing out of any labor dispute." 29 U.S.C. § 107; *see generally id.* § 101 *et seq.* (Norris-LaGuardia Act or NLGA); *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970). If a case grows out of a labor dispute, a court must determine if the case either meets all of the "rigid requirements" to issue an injunction or falls into one of two narrow exceptions. *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577, 2024 WL 4817175, at *4–5 (D.D.C. Nov. 17, 2024). Those exceptions are "to reconcile Norris-LaGuardia with the mandates of a specific federal statutes" and "to accommodate [NLGA's] strong policy favoring arbitration." *Dist. 29, United Mine Workers v. New Beckley Min. Corp.*, 895 F.2d 942, 946 (4th Cir. 1990); 29 U.S.C. §§ 107–09.[2]

This case unquestionably "grow[s] out of" a "labor dispute," which includes "any controversy . . . concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113. The scope of "labor dispute" is clear, broad, and admits no non-statutory exception. *See Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 711–13 (1982) (the "critical element . . . is whether the employer-employee relationship is the matrix of the controversy") (cleaned up); *New Beckley*, 895 F.2d at 945 (acknowledging Supreme Court

---

[2] This case does not fall within either exception. Waffle House cannot point to a federal statute that would require reconciliation with the NLGA because the injunction it seeks is "a judge-made remedy" which is "subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). The constitutional character of the instant litigation does not affect that analysis.

decisions "seem to mandate strict adherence to the literal definition of 'labor dispute'") (cleaned up). The instant proceedings stem from Waffle House allegedly committing a series of ULPs after several employees delivered a union-supported petition about their working conditions to management and went on strike in response to management's reaction. ECF 14-6 at 3–4. Waffle House allegedly disciplined one of the involved employees for her NLRA-protected activities. That factual context meets the definition of "labor dispute," as it represents a "controversy" relating to "terms or conditions of employment" of the employees affected by Waffle House's conduct. 29 U.S.C. § 113(c); ECF 14-6 at 4–5.[3] Accordingly, the relief that Waffle House requests in this case—an order blocking the Board from adjudicating ULP allegations against it—results from a labor dispute of precisely the type that Congress intended to be free from the overweening influence of federal injunctions. *Accord VHS*, 2024 WL 4817175, at *5 (constitutional challenge to NLRB grew out of a labor dispute because challenge would not exist but for the ULP charges and proceeding).

Finally, Norris-LaGuardia's strictures preclude relief where a complainant "has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29

---

[3] Congress understood that NLRA disputes would be subject to the NLGA's requirements; it included in the NLRA a limited exception to the NLGA allowing injunctions *only* in relation to enforcement or review of final Board orders or upon the Board's application for temporary relief. 29 U.S.C. § 160(h). An injunction against *non-final* Board action would enlarge this limited exception contrary to its plain meaning. *See Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 407 (1976) (exceptions to NLGA's anti-injunction policy to accommodate other laws are to be construed narrowly). Moreover, NLGA's explicit jurisdictional bar is not affected by *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), which is limited to implicit bars. *See, e.g.*, *Moats v. Nat'l Credit Union Admin. Bd.*, No. 3:23-cv-147, 2024 WL 1724271, at *2–4 (S.D. Tex. Apr. 9, 2024), *appeal docketed*, No. 24-40259 (5th Cir. Apr. 22, 2024).

U.S.C. § 108; *cf. Piedmont Aviation, Inc. v. Air Line Pilots Ass'n, Int'l*, 416 F.2d 633, 638 (4th Cir. 1969) (recognizing general principle that refusal to engage in arbitration under the Railway Labor Act precludes injunctive relief). Waffle House's failure to exhaust the NLRB's administrative processes here is fatal to its claims.[4]

### B. *Waffle House's removal claims fail because it has not alleged causal harm.*

Waffle House's claims regarding the removal protections of Board members and ALJs suffer the same fatal defect: they lack the necessary showing of causal harm to support a constitutional removal challenge. In *Collins v. Yellen*, the Supreme Court made clear that an unlawful removal restriction does not deprive properly appointed officers of "the authority to carry out the functions of the[ir] office[s]." 594 U.S. 220, 258 (2021). So long as they are validly appointed, such officials are not exercising power that they do "not lawfully possess." *Id*. As a result, to state a claim that the removal provisions of NLRB ALJs and Board members are unconstitutional, Waffle House must show the provisions "cause[d it] harm." *Id.* at 259–60.

In *K & R Contractors v. Keene*, 86 F.4th 135 (4th Cir. 2023), the Fourth Circuit interpreted *Collins* in considering a challenge to the removal protections of ALJs at the Department of Labor. The Fourth Circuit explained that, absent a showing "that the unconstitutional removal provision itself inflicted harm," a court is powerless to award a remedy, regardless of how the court would "answer the constitutional question presented." *Id.* at 148–49. The petitioner in *K & R* did not assert that any harm resulted from the challenged removal

---

[4] It does not matter that Waffle House's claims are against the NLRB, not the Union or its employees. *E.g., Armco, Inc. v. United Steelworkers*, 280 F.3d 669, 678–81 (6th Cir. 2002) (injunction against government officials impermissible because it would interfere with union's rights in labor dispute); *see also New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 560 (1938); *Nexstar Media, Inc. Grp. v. NLRB*, --- F. Supp. 3d ---, No. 4:24-cv-01415-BYP, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (noting that suit was "intended to divert the NLRB's ability to administratively resolve the dispute initiated by [a union]").

protections, and there was no evidence that the Secretary of Labor "attempted or desired to remove" the ALJs who acted in the administrative case. *Id*. Thus, the petitioner was "not entitled to any relief on its removal protections claim." *Id.* at 150.

Consistent with *Collins* and *K & R Contractors*, every circuit court to have considered the issue has held that a plaintiff must show causal harm.[5] Nevertheless, Waffle House argues that because the ULP proceeding here "has yet to occur," it need not satisfy the harm requirements of *Collins* or *K & R*. Mem. 8 n.2. Waffle House is mistaken. Courts have repeatedly rejected this argument and found *Collins* applicable to both retrospective relief and prospective relief. *E.g.*, *Leachco*, 103 F.4th at 757 ("*Collins*' relief analysis applies to both retrospective and prospective relief"); *Crystal Moroney*, 63 F.4th at 180-81 (explaining that *Collins* "applies with equal force regardless of the relief sought"); *CFSA*, 51 F.4th at 631 (same); *Calcutt*, 37 F.4th at 316 ("The *Collins* inquiry focuses on whether a harm occurred that would create an entitlement to a remedy, rather than the nature of the remedy . . . ."); *Cortes v. NLRB*, No. 1:23-cv-02954, 2024 WL 1555877, at *6 (D.D.C. Apr. 10, 2024).

This is why courts have repeatedly denied injunctions sought on removability grounds when challengers failed to allege or show causal harm.[6] Here, Waffle House "has not asserted

---

[5] *See Bhatti v. FHFA*, 97 F.4th 556, 559–62 (8th Cir. 2024); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757-58 (10th Cir. 2024), *petition for cert. filed*, No. 24-156 (Aug. 9, 2024); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 614-15 (3d Cir. 2024), *cert. denied*, No. 24-185, 2024 WL 5112295 (Dec. 16, 2024); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2024); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), *reinstating opinion in relevant part*, 104 F.4th 930 (5th Cir. 2024), *and reh'g denied*, No. 21-50826 (5th Cir. Nov. 12, 2024); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742–43 (9th Cir. 2022); *Calcutt v. FDIC*, 37 F.4th 293, 318–20 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023).

[6] *See, e.g.*, *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *2–3 (6th Cir. Oct. 13, 2024), *emergency application for writ of injunction denied*, No. 24A348, 2024 WL

any possible harm resulting from the allegedly unconstitutional limitations on the President's ability to remove" these officials, and nothing suggests that the President has "attempted or desired" to remove any NLRB officials. *K & R*, 86 F.4th at 149. Accordingly, Waffle House is "not entitled to any relief on its removal protections claim[s]." *Id.* at 150. Thus, Waffle House's claim is fit for dismissal, not an extraordinary remedy.

### C. Removal protections for Board members are constitutional.

Even if Waffle House could satisfy the required causal-harm showing described above, its theory for invaliding the Board members' removal protections is foreclosed by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). In *Humphrey's Executor*, the Supreme Court held that members of the Federal Trade Commission (FTC)—along with other multi-member, decisionmaking bodies of experts performing "quasi-legislative and quasi-judicial" functions— could be constitutionally insulated from removal. *Id.* at 629–32. Congress created the NLRB with *Humphrey's Executor* in mind, modeling the Board's structure after the FTC. *See* H.R. Rep. 74-1371, at 4 (1935) (stating that the NLRB "is to have a similar status to that of the [FTC]" and describing express removal protections for Board members as "desirable in the light of" *Humphrey's Executor*), *reprinted in* 2 NLRB, Legislative History of the National Labor Relations

---

4508993, at *1 (Oct. 15, 2024) (Kavanaugh, J., in chambers); *Leachco*, 103 F.4th at 765; *Burgess v. FDIC*, 639 F. Supp. 3d 732, 747 (N.D. Tex. 2022), *appeal docketed sub nom. Burgess v. Whang*, No. 22-11172 (5th Cir. Dec. 5, 2022). Several district courts have also taken this approach to deny preliminary injunctive relief in suits, like this one, challenging removal protections of NLRB Board members and ALJs. *See, e.g.*, *HonorHealth v. NLRB*, No. CV-24-03009-PHX-DJH, 2024 WL 4769772, at *3–4 (D. Ariz. Nov. 13, 2024); *Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, No. 24-09016, 2024 WL 4690938, at *3 (D.N.J. Nov. 6, 2024); *Ares Collective Grp. LLC v. NLRB*, No. CV-24-00517-TUC-SHR, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024); *YAPP USA*, 2024 WL 4119058, at *4; *see also Cortes*, 2024 WL 1555877, at *7; *Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445, 2024 WL 4594709, at *4–5 (W.D. Mich. Oct. 25, 2024), *appeal docketed*, No. 24-1975 (6th Cir. Nov. 5, 2024).

Act, 1935, at 3255 (1949); *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020) (NLRB and FTC shared relevant features).

The *Humphrey's Executor* Court identified features like the FTC commissioners' seven-year, staggered terms as evidence of Congress's intent to "create a body of experts who shall gain experience by length of service," which "would not be subject to complete change at any one time." 295 U.S. at 624–25. The core holding of *Humphrey's Executor* therefore recognizes that—at the very least—Congress can insulate members of commissions like the FTC from unencumbered presidential removal. *See Wiener v. United States*, 357 U.S. 349 (1958) (inferring removal protections for members of the War Claims Commission).

Accordingly, no circuit court has ever struck down removal protections for officers serving on a multimember commission. *See Leachco*, 103 F.4th at 760–63 (upholding removal protections identical to those of Board members belonging to the heads of the Consumer Product Safety Commission); *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 352 (5th Cir. 2024) (holding that the *Humphrey's Executor* rationale broadly "protects any 'traditional independent agency headed by a multimember board'") (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 207 (2020)), *cert. denied*, No. 23-1323, 2024 WL 4529808 (Oct. 21, 2024). And the Supreme Court has continued to leave *Humphrey's Executor's* core holding untouched. *See Seila Law*, 591 U.S. at 228.

As several district courts have now recognized, "[t]he organizational features of the NLRB match the profile of an agency that fits within the parameters of the *Humphrey's Executor* removal exception," *Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *7 (N.D. Ill. Sept. 13, 2024), because it is "a multi-member independent, expert agency," with members who "are balanced along partisan lines, serve staggered multi-year terms, and exercise quasi-

11

legislative and quasi-judicial power," and the "structure is not novel." *YAPP USA*, 2024 WL 4119058, at *5; *accord Loren Cook Co. v. NLRB*, No. 6:24-CV-03277, 2024 WL 5004534, at *5– 6 (W.D. Mo. Nov. 27, 2024); *Kerwin*, 2024 WL 4594709, at *7.

Resisting this conclusion, Waffle House misreads *Seila Law*, 591 U.S. 197, and maintains that because Board members "exercise significant executive authority," *Humphrey's Executor* does not apply. Mem. 5–6 n.1. This is wrong and would require finding that *Seila Law* radically upended decades of precedent without saying so by supplanting *Humphrey's Executor* with a new rule allowing officers on multimember boards to receive removal protections only if they do not exercise "significant" executive power. While the Court in *Seila Law* struck down a removal protection in the "novel context" of an agency (the Consumer Financial Protection Bureau (CFPB)) headed by a single individual, the Court expressly disavowed that it was disturbing any of its prior precedents. It did "not revisit . . . prior decisions allowing certain limitations on the President's removal power," 591 U.S. at 204, or "revisit *Humphrey's Executor* or any other precedent today," *id.* at 228; *see also FTC v. Grand Canyon Educ., Inc.*, --- F. Supp. 3d ----, No. CV-23-02711-PHX-DWL, 2024 WL 3825087, at *6 (D. Ariz. Aug. 15, 2024). In fact, seven Justices in *Seila Law* agreed that the CFPB's unconstitutional single-director structure could be cured by converting it to a multimember agency. *Seila Law*, 591 U.S. at 237 (plurality opinion); *see id.* at 298 (Kagan, J., concurring in part and dissenting in part). That makes perfect sense if *Humphrey's Executor* remains binding. But it makes no sense on Waffle House's view, because the CFPB undoubtedly "wields significant executive power." *Id.* at 204.

District courts have recognized, in considering materially identical challenges, that Waffle House's view "interprets *Humphrey's Executor* and *Seila Law* too narrowly." *YAPP USA*, 2024 WL 4119058, at *6; *Kerwin*, 2024 WL 4594709, at *7. "And its interpretation has been

rejected by the Fifth and Tenth Circuits." *YAPP*, 2024 WL 4119058, at *6. In *Consumers'*

*Research*, the Fifth Circuit upheld removal protections for Consumer Product Safety

Commission (CPSC) commissioners, despite recognizing that the CPSC "exercises substantial

executive power (in the modern sense)," because *Humphrey's Executor* "still protects any

'traditional independent agency headed by a multimember board.'" 91 F.4th at 353–54, 352

(quoting *Seila Law*, 591 U.S. at 207). *Accord Leachco*, 103 F.4th at 761–63 (holding CPSC

commissioners' removal protections lawful); *see also Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047

(5th Cir. 2023) (finding *Humphrey's Executor* still applicable to the modern FTC).

The reasoning in *Consumers' Research* and *Leachco* confirms that *Humphrey's Executor*

applies to NLRB Board members. The NLRB is "a prototypical traditional independent agency,

run by a multimember board." *Consumers' Rsch.*, 91 F.4th at 354 (cleaned up); *Leachco*, 103

F.4th at 762 ("CPSC's structure is well-grounded in historical precedent," similar "to many other

independent, multimember agencies"). The NLRB is headed by five members and thus lacks a

single-director structure, which was "the defining feature that the Supreme Court in *Seila Law*

relied on to hold the CFPB unconstitutional." *Consumers' Rsch.*, 91 F.4th at 354. And the NLRB

has a "staggered appointment schedule, meaning that each President *does* have an opportunity to

shape its leadership and thereby influence its activities." *Id.* at 354 (cleaned up).

In sum, it is irrelevant whether Board members exercise "significant" executive

power.[7] It is enough for the NLRB to show that it fits the mold of a "traditional independent

---

[7] Waffle House's "significant executive authority" argument also fails on the merits. Although, as
Waffle House points out [Mem. 5], the Board has rulemaking authority, it cannot initiate
administrative proceedings, seek civil monetary penalties, or provide any other form of
nonremedial relief. 29 U.S.C. § 160(a), (c). And the Board's orders are not self-enforcing. *Dish
Network*, 953 F.3d at 375 n.2. Furthermore, Waffle House gains little by pointing to the Board's
circumscribed role in authorizing the General Counsel to seek temporary injunctive relief in

agency headed by a multimember Board," *Seila Law*, 591 U.S. at 207, which it clearly does. Since *Humphrey's Executor* remains binding precedent, Waffle House's challenge to Board member tenure protections must fail.

### D. Removal protections for the NLRB's ALJs are constitutional.

Waffle House's ALJ-removal claim warrants no relief as it has not made the required causal-harm showing. But even if it could do so, precedent confirms that ALJs' removal protections are constitutional.

"Inferior officers," a category which includes ALJs, can be afforded a measure of protection from removal without interfering with the President's constitutional duties. *Seila Law*, 591 U.S. at 217 (citing *Morrison v. Olson*, 487 U.S. 654 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886)). In *Perkins*, the Supreme Court held unambiguously that Congress "may limit and restrict the power of removal" of inferior officers by Departments Heads "as it deems best for the public interest." 116 U.S. at 485. Nearly 100 years later, in *Morrison*, the Court revisited the issue and upheld a "good cause" removal restriction for an independent counsel appointed to investigate and prosecute serious crimes committed by executive officers. 487 U.S. at 685–93. Although the independent counsel exercised "discretion and judgment," the Court noted that the counsel "lack[ed] significant policymaking and administrative authority." *Id.* at 691. Therefore, the Court concluded that "the President's need to control the exercise of that discretion [was not] so central to the functioning of the Executive Branch as to require . . . that the counsel be terminable at will by the President." *Id.* at 691–92. These cases establish that

---

district court under Section 10(j) of the Act, 29 U.S.C. § 160(j). Mem. 6. The FTC and the CPSC both have the power to authorize similar injunction lawsuits. *See* 15 U.S.C. § 53(b); 15 U.S.C. § 2064(g); *FTC v. Am. Nat'l Cellular, Inc.*, 810 F.2d 1511, 1513–14 (9th Cir. 1987) (rejecting argument that FTC's post-*Humphrey's* ability to seek injunctive relief meant that *Humphrey's Executor* was not controlling).

Congress may regulate the conditions for removal of inferior officers, so long as Congress does not impose restrictions that "deprive the President of adequate control" over the official's exercise of executive power. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010); *see also Morrison*, 487 U.S. at 692–93.

The statute affording NLRB ALJs a measure of removal protection satisfies constitutional requirements. ALJs across the Executive Branch are afforded a degree of decisional independence through a statutory provision that allows them to be removed from office only upon a showing of "good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a). The "good cause" removal protection that Congress has afforded to ALJs, including the one who will be assigned to Waffle House's ULP case, is consistent with the Supreme Court precedent on this issue.

Congress created ALJs as "semi-independent subordinate hearing officers" within agencies. *Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128, 132 (1953) (cleaned up). Simultaneously, Congress sought to ensure that "agenc[ies] retain[] full power over policy." 2 Paul R. Verkuil, *et al.,* ACUS, Recommendations and Reports: *The Federal Administrative Judiciary* 803 (1992). The Administrative Procedure Act accordingly gives agencies plenary power to reverse ALJs' decisions. *See* 5 U.S.C. § 557(b). And under Section 7521(a)'s "good cause" standard, an ALJ can be removed for refusing to follow binding legal or policy judgments announced by the Board.

Consistent with that design, the regulations governing NLRB adjudications assure that the five-seat Board, and not ALJs, is ultimately responsible for setting policy. The ALJ conducts an administrative hearing, *see* 29 C.F.R. §§ 102.34–.35, and issues a decision containing factual and legal determinations regarding whether a violation has occurred, as well as a recommended

order, *id.* § 102.45(a). But, crucially, the ALJ's order is not a final agency order until the Board

has had an opportunity to hear and resolve any party's exceptions to the ALJ's "decision or to

any other part of the record or proceedings." *Id.* § 102.46(a); *see id.* § 102.48. Even if no

exceptions are filed, the Board may nonetheless modify the judge's recommended order to

conform to the Board's current remedial practices. *See, e.g.*, *Cooling for Less, Inc.*, Case 28-CA-

105006, 2014 WL 1871305, at *1 n.1 (2014). There is no risk that an ALJ will set policy even if

the parties decline to seek Board review since ALJs' decisions are not precedential. *N.Y. Paving*,

2022 WL 4546315, at *6 n.11. Furthermore, the Board has the discretion to immediately review

an ALJ's interlocutory orders. *See* § 102.26. And the Board can choose not to use ALJs at all.

*See* 29 U.S.C. § 160(b); 29 C.F.R. § 102.34. Put simply, this scheme ensures that NLRB ALJs

follow Board policy; they do not set it. *See, e.g.*, *Univ. Med. Ctr.*, 335 NLRB 1318, 1342 (2001)

(ALJs "lack authority to overrule" and are "bound by" Board decisions) (citation omitted).

Because of these functions and features, removal protections for ALJs comport with

constitutional requirements, as several courts of appeals have confirmed. *Decker Coal v.

Pehringer*, 8 F.4th 1123, 1129–36 (9th Cir. 2021) (holding that Congress could grant tenure

protections to DOL ALJs); *Calcutt*, 37 F.4th at 319–20 (suggesting same for FDIC ALJs);

*Leachco*, 103 F.4th at 764 (same for CPSC ALJs). *Contra Jarkesy v. SEC*, 34 F.4th 446, 463 &

n.17 (5th Cir. 2022) (concluding that removal protections for SEC ALJs are unconstitutional, but

declining to decide appropriate remedy), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). This

Court should follow the well-reasoned majority approach exemplified by *Decker Coal*, *Calcutt*,

and *Leachco*.[8]

---

[8] Where there is a circuit split and no binding precedent, courts have found that plaintiffs cannot
establish a likelihood of success on the merits. *See, e.g.*, *Alivio*, 2024 WL 4188068, at *11; *Care*

Waffle House does not engage with this precedent and instead argues that NLRB ALJs' removal protections cannot survive because they allegedly "have three layers of insulation from appropriate Presidential oversight." Mem. 7. This argument apparently relies on *Free Enterprise Fund*, which invalidated portions of a "dual for-cause" statutory scheme allowing tenure-protected members of the SEC to remove members of the Public Company Accounting Oversight Board (PCAOB), but only if an "unusually high standard" was met. 561 U.S. at 502, 503. Waffle House's argument must be rejected because it proceeds from a false premise concerning the number of layers at issue here and overreads *Free Enterprise Fund*, which explicitly said that its "holding . . . does not address that subset of independent agency employees who serve as [ALJs]." 561 U.S. at 507 n.10.

First, Waffle House is mistaken to suggest that the role of the MSPB in any ALJ's removal creates an additional layer of removal protection. Mem. 7–8. The MSPB can confirm whether the NLRB properly invoked "good cause" in a particular ALJ-removal case, but that does not create a third layer of insulation or pose constitutional problems. *See SSA v. Levinson*, 2023 M.S.P.B. 20, ¶¶ 37–38 (2023) (MSPB neither "takes, [n]or directs an employing agency to take, an action against an ALJ under 5 U.S.C. § 7521"). The statutory text makes clear that the decision to remove an ALJ must be made "by the agency." 5 U.S.C. § 7521(a). The MSPB's function thus mirrors that of a court reviewing claims that an officer has been improperly removed. The Supreme Court has perceived "no constitutional problem" with "judicial review of the removal decision" because judicial review to ensure removals occur only in accordance with a statute neither "inject[s] the Judicial Branch into the removal decision" nor "put[s] any

---

*One, LLC v. NLRB,* No. 3:23-cv-00831 (RNC), 2023 WL 6457641, at *3–4 (D. Conn. Oct. 4, 2023), *appeal docketed*, No. 23-7475 (2d Cir. argued Nov. 12, 2024).

additional burden on the President's exercise of executive authority." *Morrison*, 487 U.S. at 693 n.33. If it is constitutional for a court—wholly beyond the control of the President—to adjudicate whether cause for removal has been demonstrated, it is *a fortiori* constitutional for the MSPB (which is *more* accountable to the President than a court) to conduct the same adjudication.

Second, even if MSPB review did constitute a third layer of removal protection (with Board members' and ALJs' removal protections being the first two layers), Waffle House never explains why that matters. As the Sixth Circuit has observed, the validity of ALJs' removal protections "centers on their status as adjudicatory officials" and does not depend "on how many levels of removal protections they enjoy." *Calcutt*, 37 F.4th at 320. Indeed, in *Leachco*, the Tenth Circuit rejected a constitutional challenge to the removal protections for ALJs at the CSPB, an independent agency with leaders possessing the same removal protections as Board members, notwithstanding the role of the MSPB in such removal proceedings. 103 F.4th at 764–65.

Arguing otherwise, Waffle House cites one non-binding, out-of-circuit case. Mem. 7–8 (citing *Space Exploration Techns. Corp. v. NLRB*, No. 6:24-cv-00203, 2024 WL 3512082 (N.D. Tex. July 23, 2024), *appeal docketed*, No. 24-50627 (5th Cir. Aug. 1, 2024)). That decision follows the Fifth Circuit's outlier decision in *Jarkesy*, which "applie[d] what is essentially a rigid, categorical standard, not the functional analysis required by the Supreme Court's precedents," 34 F.4th at 478 (Davis, J., dissenting). The Tenth Circuit persuasively explained in *Leachco*, 103 F.4th at 764, why *Jarkesy* overread *Free Enterprise Fund* and should not be followed.[9]

---

[9] That same overreading was erroneously adopted by the district court in *VHS Acquisition Subsidiary No. 7 v. NLRB*, --- F. Supp. 3d ----, No. 1:24-cv-02577, 2024 WL 5056358, at *5–9 (D.D.C. Dec. 10, 2024), which sided with the Fifth Circuit over the "the Sixth, Ninth, and Tenth." *Id.* at *9. But, even though the *VHS* court incorrectly resolved the merits of this issue, it correctly declined to enjoin the ULP case at issue there. *See* above at 6.

Numerous district courts outside the Fifth Circuit have concluded that challenges to ALJ removal protections are unlikely to succeed. For instance, in *Loren Cook Co. v. NLRB*, No. 6:24-CV-03277, 2024 WL 5004534, at *3–5 (W.D. Mo. Nov. 27, 2024), *Alivio Medical Center*, 2024 WL 4188068, at *11 and *YAPP*, 2024 WL 4119058, at *8, three district courts not bound by *Jarkesy* denied motions to preliminary enjoin NLRB proceedings based on this claim. *See also Kerwin*, 2024 WL 4594709, at *4–5 (denying motion for judgment on the pleadings premised in part on challenge to NLRB ALJs' removal protections).

For all these reasons, Waffle House is not likely to succeed on the merits of this claim.[10]

### E. Waffle House's Seventh Amendment claim is beyond this Court's subject-matter jurisdiction and contrary to controlling law.

Waffle House proceeds straight to the merits of its Seventh Amendment claim without establishing jurisdiction (as it must) over a non-structural, as-applied claim based on remedies that are not even being pursued against it in the ULP case. Mem. 8–11. A three-part inquiry is used to determine whether an exclusive statutory review scheme such as the NLRA precludes district court jurisdiction: (1) does "precluding district court jurisdiction . . . foreclose all meaningful judicial review"; (2) is the challenge "wholly collateral" to the agency's normal proceedings; and (3) does the claim fall outside "the agency's expertise?" *Axon*, 598 U.S. at 186.

Waffle House's claim appears to rest on conjecture that "the General Counsel will concoct a legal theory to attempt to obtain a monetary remedy against Waffle House." Compl. ¶ 56. Yet Waffle House concedes that the NLRB complaint does not seek "monetary relief or

---

[10] Even if Waffle House could establish causal harm and constitutional violations, the proper remedy would be to sever the offending statutory language, not to enjoin the entire proceeding, as such relief would be far broader than necessary to correct the issue. *See Space Expl. Techs. Corp. v. Bell*, 701 F. Supp. 3d 626, 635 (S.D. Tex. 2023) (withholding preliminary relief on removability grounds for this reason). It is not necessary for this Court to decide now precisely how severance would operate at final judgment in order to deny the present motion.

traditional common law damages." Mem. 9. Setting aside the justiciability problems with this claim, fully discussed below at 25–26, several district courts have concluded that an argument like this fails all *Axon* elements. *See VHS*, 2024 WL 4817175, at *3–4; *Nexstar*, 2024 WL 4127090, at *3–5; *YAPP*, 2024 WL 4119058, at *10–11; *Blankenship v. FINRA*, No. 24-cv-3003, 2024 WL 4043442, at *2–3 (E.D. Pa. Sept. 4, 2024), *appeal docketed*, No. 24-2860 (3d Cir. Oct. 4, 2024). First, even *if* the Board orders the remedies about which Waffle House complains (which is not demonstrably likely to occur), Waffle House can obtain meaningful review of that order in a court of appeals, as the Board's orders are not self-enforcing. 29 U.S.C § 160(f). Second, Waffle House's claim presents a question of "how [the NLRB's] power [is] wielded," not the "power generally" of the Agency. *Axon*, 598 U.S. at 193. Determining the remedy for a given NLRA violation is not collateral to a Board proceeding; it is what the Agency does regularly. Finally, the Board's authority to fashion remedies under Section 10(c) is a core area of its expertise. *Phelps Dodge*, 313 U.S. at 194. As none of the *Axon* elements favor district court jurisdiction, this claim is fit for dismissal and cannot support a preliminary injunction.[11]

On the merits, Waffle House claims that, under *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), it is entitled to a jury trial. The Supreme Court rejected this argument in the earliest days of the NLRB. *See Jones & Laughlin*, 301 U.S. at 48. Nothing in *Jarkesy* changes this. For the Seventh Amendment to apply, a court must determine that the claim and remedy arise under the common law, i.e., that the challenged adjudication involves a statutory claim that is "legal in nature."

---

[11] If the Board does *not* order remedies Waffle Houses alleges necessitate a jury trial, there would be no need to address the constitutional issue. That is a powerful reason to allow the issue of proper remedy to percolate through the agency process before wading into the need for a jury trial. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22–23 (2012) (no subject-matter jurisdiction where "preliminary questions unique to the employment context may obviate the need to address the constitutional challenge.").

*Jarkesy*, 144 S. Ct. at 2128–29. Even if it does, the court must determine whether the Supreme

Court's "public rights" doctrine nonetheless allows Congress to assign the matter to agency

adjudication without a jury trial. *See Atlas Roofing Co. v. Occupational Safety & Health Rev.

Comm'n*, 430 U.S. 442, 449–60 (1977).

Here, the public-rights exception alone defeats Waffle House's Seventh Amendment

claim. A court examines whether a statutory claim "borrow[s] its cause of action from the

common law" to determine whether it falls within this exception. *Jarkesy*, 144 S. Ct. at 2137.

Unlike the securities-fraud claims brought by the SEC in *Jarkesy*—which were analogous to

common-law fraud—the rights guarded by the NLRA are "unknown to the common law." *Jones

& Laughlin*, 301 U.S. at 48. Authoritative descriptions of the NLRB's purpose conclusively show

that it vindicates public, not private, rights.[12] And the Fourth Circuit long ago rejected the claim

that the NLRB's orders necessarily implicate Seventh Amendment rights, as NLRB cases are

"not in the nature of a suit at common law." *See NLRB v. Tidewater Express Lines*, 90 F.2d 301,

302–03 (4th Cir. 1937). The Supreme Court in *Jarkesy* even quoted—without disapproval—its

prior precedent applying the public-rights exception to the NLRB's ULP proceedings. *Jarkesy*,

144 S. Ct. at 2137–38 (quoting *Jones & Laughlin* and the discussion of *Jones & Laughlin* in

*Atlas Roofing Co. v. OSHRC*, 430 U.S. 442 (1977)). Nothing in *Jarkesy* calls into question *Jones

& Laughlin's* continuing validity or its dispositive weight here.[13] *See YAPP*, 2024 WL 4119058,

---

[12] *E.g.*, *NLRB v. Indus. Union of Marine & Shipbuilding Workers, Local 22*, 391 U.S. 418, 424 (1968) ("A proceeding by the Board is not to adjudicate private rights but to effectuate a public policy."); *NLRB v. Fant Milling Co.*, 360 U.S. 301, 307–08 (1959) (Board does not "adjudicate private controversies" but "advance[s] the public interest"); *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 364 (1940) ("The Board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices.").
[13] Waffle House makes passing references to *Curtis v. Loether*, 415 U.S. 189 (1974), to claim that proceedings under the NLRA fall within the Seventh Amendment. Mem. 9, 11. To the contrary,

at *2; *Ponte v. FDIC*, No. 24-CV-2379 (APM), 2024 WL 4730692, at *1, *7 (D.D.C. Oct. 11, 2024); *Bell*, 701 F. Supp. 3d at 635–36.

Even if the public-rights exception did not apply, the underlying ULP adjudication is not "legal in nature," as neither "the cause of action [nor] the remedy it provides" supports that conclusion. *Jarkesy*, 144 S. Ct. at 2129. As just discussed, NLRA enforcement actions do not have common-law origins or analogues. Further, the make-whole remedies available to the Board are equitable—and therefore need not be submitted to a jury—because they seek "not to punish or deter the wrongdoer," but "restore the status quo." *Id.* at 2129 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)). By contrast, in *Jarkesy*, the Court determined that the SEC's civil monetary penalties, which had the potential to far exceed any loss to victims and could have been pocketed directly by the agency (not the victims), clearly were designed to deter conduct, not to make individuals whole. *Jarkesy*, 144 S. Ct. at 2129–30. The Court determined that "[s]uch a penalty by definition does not 'restore the status quo' and can make no pretense of being equitable." *Id*. at 2130 (quoting *Tull*, 481 U.S. at 422).

None of the remedies in NLRB cases are akin to the monetary penalties at issue in *Jarkesy.* Waffle House's own suppositions that the Board may be "receptive to" awarding "limitless damages" [Mem. 10] does not alter the reality that NLRB remedies are not designed to "punish bad actors," but rather to "implement the statutory principles of rectifying the harms actually incurred by the victims of ULPs and restoring them to where they would have been but

---

*Curtis* distinguished the public-rights scheme at issue in *Jones & Laughlin* from other newly created statutory rights. *Curtis*, 415 U.S. at 194-95. Indeed that decision expressly highlights *Jones & Laughlin* as "stand[ing] for the proposition that the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication and would substantially interfere with the NLRB's role in the statutory scheme." *Id.* at 194.

for the unlawful conduct." *Thryv,* 2022 WL 17974951, at *17.[14] This is the opposite of the monetary penalties in *Jarkesy*—remedies that, the Court explained, are available only at law. While "the remedy [was] all but dispositive" in favor of the challenger in *Jarkesy*, 144 S. Ct. at 2129, it is dispositive in the other direction here.

In attempts to portray the NLRB as presiding over legal claims, Waffle House posits that the NLRB's monetary remedies seek to deter, not to make whole (notwithstanding that no monetary remedies are being sought against it), and that claims arising under the NLRA are essentially torts. Mem. 9–11. In doing so, Waffle House runs into the above caselaw and long-settled Fourth Circuit precedent. In *Tidewater Express*, the Fourth Circuit held that the Seventh Amendment, which pertains to "right[s] which existed under common law," had "no application" to an NLRB order requiring, among other actions, reimbursement of wrongfully discharged employees, where "recovery of money damages is an incident to equitable relief" and "the proceeding is not in the nature of a suit at common law." 90 F.2d at 302–03.[15] Thus, Waffle House shows no likelihood of succeeding on its Seventh Amendment claim (which is entirely speculative, since the complained-of remedies are not being sought against Waffle House).

---

[14] Moreover, the Supreme Court has held that monetary make-whole relief that is incidental to the Board's equitable remedies is itself equitable in nature for that reason alone. *Jones & Laughlin*, 301 U.S. at 48; *see Atlas Roofing Co.*, 430 U.S. at 453 n.10 (discussing alternate, independently sufficient holding in *Jones & Laughlin* that monetary relief ordered in conjunction with a reinstatement order is equitable).

[15] Similarly, in *NLRB v. Baltimore Transit Co.*, the Fourth Circuit held that an NLRB order requiring an employer to reimburse employees for dues withheld for a company-dominated union was not punitive, a "redress for a private wrong," or "adjudication of a mass tort," but was a make-whole remedy "necessary to wipe out the effect of the unfair labor practice" and meant to "vindicate public, not private rights." 140 F.2d 51, 56–58 (4th Cir. 1944) (cleaned up).

### F. *Waffle House is not likely to establish district court jurisdiction or prevail on any of its claims alleging an absence of due-process protections.*

Waffle House cannot prevail on its vague, speculative, and unsupported claims that it is being denied due process. Compl., ¶¶ 62–77 (Count III). It charges that the Board's combination of functions violates the separation of powers [Mem. 12], Agency respondents are at a disadvantage concerning prehearing discovery options [Mem. 12–13], and the proceedings are biased because NLRB ALJs are Agency employees and two Board members were employed by different locals of the Service Employees International Union prior to their appointments [Mem. 13–15]. All these claims are plagued by serious threshold questions of this Court's subject–matter jurisdiction and Waffle House's Article III standing. Moreover, they fail on their merits.

**Axon** *does not confer jurisdiction over the due process claims.* To the extent that Waffle House simply repeats its Seventh Amendment claim that the Board adjudicates "private rights" [Mem. 12], that claim is barred by *Axon*, 598 U.S. at 186, for the reasons given above at 20. To the extent it relies on *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), to argue that Board members exercise a "judicial task of interpreting the Act," [Mem. 12], meaningful review of any such "interpretation" can be (and normally is) obtained from a court of appeals under Section 10(f) of the NLRA after the Board issues a final order. This claim is essentially a premature merits defense to ULP liability, which is not "wholly collateral" but rather falls within the Agency's expertise, subject to judicial review on appeal. Plus, *Loper Bright* does not forbid agencies from adjudicating altogether; it only speaks to what deference their determinations may be afforded. 144 S. Ct. at 2263–73. These due-process claims have less to do with the NLRB's "power generally" and more with "how that power [will be] wielded" in Waffle House's case. *Axon*, 598 U.S. at 193.

Nor does *Axon* provide a jurisdictional basis for Waffle House's remaining claims about prehearing discovery and bias, which smack of requests for "interlocutory review," despite that *Axon* made clear the Supreme Court had no "newfound enthusiasm for" such review. 598 U.S. at 192. These claims go to how the Board's mechanisms and current personnel affect Waffle House's individual ULP proceeding; they are wholly related to the NLRB's case-handling procedures and the identity of particular Board members, not to the Board's structure.[16] Waffle House can likewise receive meaningful review of these claims under Section 10(f) in a court of appeals, where "all questions of the jurisdiction of the Board and the regularity of its proceedings, all questions of constitutional right or statutory authority are open to examination by the court." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 49 (1938); *cf. J.P. Stevens Emps. Educ. Comm. v. NLRB*, 582 F.2d 326, 329 (4th Cir. 1978) ("Any constitutional claims urged by the Committee can be properly reviewed by this court after termination of the lawful Board proceedings.").

**The due process claims are not justiciable.** None of these claims satisfy the "irreducible constitutional minimum of standing," as Waffle House cannot show a "concrete and particularized" injury that is both "actual or imminent, not conjectural or hypothetical" and capable of redress now. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Starting with the prehearing discovery claim, Waffle House has not alleged particular information it would seek via the Agency subpoena process of which it complains, nor an actualized harm of "being charged with and prosecuted for additional [ULPs]" based on such hypothetical subpoenas.

---

[16] Waffle House itself notes that Members Prouty's and Wilcox's prior employment with SEIU locals is a "specific" concern for Waffle House, as opposed to being an Agency-wide issue. Mem. 14. This claim is clearly outside *Axon*'s scope.

Mem. 12–13.[17] In *NLRB v. Carolina Food Processors, Inc.*, the Fourth Circuit flatly rejected a

materially similar claim, in the context of a subpoena-enforcement case, that the Board's

procedures denied the employer "substantive due process" by affording the NLRB unequal

pretrial discovery. 81 F.3d 507, 512–13 (4th Cir. 1996) (citing *NLRB v. Martins Ferry Hosp.*

*Ass'n*, 649 F.2d 445, 449 (6th Cir. 1981)). The court found the employer's claim to be

> a request that we remedy a due process violation that has not yet occurred, and which
> may never come to pass, simply on the strength of [the employer's] assertion that the
> violation might occur. This we decline to do, for this court is not in the business of
> righting speculative wrongs.

*Id.* at 513. So too here.

The circuit court's reasoning in *Carolina Food* underscores why none of Waffle House's

due process claims are justiciable, as Waffle House fails to show that it is facing or experiencing

any actual injury from those claims. This is particularly true for the claim that the Board's

combination of functions violates due process, which complains that the Board is adjudicating

"private rights," but appears to essentially rehash Waffle House's Seventh Amendment claim

[Mem. 12] as to potential monetary remedies. As the General Counsel is not seeking a monetary

make-whole remedy, it is sheer speculation to allege otherwise, *see* above at 20.[18]

As to Waffle House's other due process allegations, no ALJ has ruled on the NLRB

complaint, and it is not clear if the matter will ever come before the Board in a contested posture

---

[17] Respondent-employers can and often do use subpoenas in connection with ULP hearings
pursuant to the procedures in 29 C.F.R. § 102.31(a). But Board precedent prohibits employers
from violating Section 8(a)(1) of the Act by unlawfully interrogating or surveilling employees'
Section 7 activities through the use of subpoenas, as occurred in the case Waffle House cites.
Mem. 13 (citing *Tracy Auto LP*, 372 NLRB No. 101 (2023)).

[18] The administrative complaint alleges that Waffle House unlawfully disciplined an employee
and does not reference any financial losses to that employee caused by that discipline. The
Board's standard remedy in such circumstances is to order the employer to rescind the discipline,
remove references to it, and notify the employee of those actions. *See Aqua-Aston Hosp., LLC*,
365 NLRB 592, 593 (2017).

(as the complaint could be dismissed, withdrawn, or resolved to the parties' satisfaction). For this reason, Waffle House's due process allegation is wholly speculative and not justiciable. And even should this matter eventually reach the Board, there is no guarantee that Members Prouty or Wilcox would be on the panel hearing this case.[19] Waffle House argues that these members "refused to recuse themselves in previous cases involving the SEIU,"[20] but never asserts that it has exhausted its administrative remedies for this claim by requesting that they recuse themselves and that such request was denied. Waffle House's claims of unfairness and conflicts of interest are thus premature and lacking redressable injury.

       ***Even if subject-matter jurisdiction existed, the due-process claims fail on their merits.***
Initially, the NLRB's structure does not impermissibly blur the separation of powers. As the Fourth Circuit found in a case alleging that the Department of Housing and Urban Development improperly serves as both prosecutor and judge, "it is well established that due process rights are not violated simply by the combination of the investigative, prosecutorial, and adjudicative functions in one agency. Rather, actual bias or a high probability of bias must be present before due process concerns are raised." *Marshall v. Cuomo*, 192 F.3d 473, 484 (4th Cir. 1999) (citing *Withrow v. Larkin*, 421 U.S. 35, 47–53 (1975)); *Illumina*, 88 F.4th at 1047 (rejecting argument that FTC improperly combines prosecutorial and judicial functions).

       As noted, Waffle House's complaints about the NLRB's allegedly unlawful combination of functions [Mem. 12] largely repeat its argument that the NLRB adjudicates private rights. This

---

[19] 29 U.S.C. § 153(b) grants the Board the authority to delegate authority to groups of three or more members, which is the Board's standard practice in most cases. *See New Process Steel, L.P. v. NLRB*, 560 U.S. 674 (2010).

[20] Waffle House's citation on this point [Mem. 15] presumably refers to *Starbucks Corp.*, 373 NLRB No. 123, 2024 WL 4381325 (2024). As recusal decisions are made on a case-by-case basis, that case is not dispositive of how a recusal determination would be made in Waffle House's case if it raised the issue.

assertion is refuted by longstanding Supreme Court and Fourth Circuit precedent, as discussed above at 21–22.[21] And Waffle House's suggestion, referencing *Loper Bright*, that the NLRB wields improper judicial power through interpreting the NLRA [Mem. 12] is similarly baseless.[22]

Waffle House fares no better on its claim that the Board has an unjust advantage in conducting prehearing discovery. Mem. 12–13. Waffle House admits that its claim is contrary to *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) [Mem. 13 n.4], which upheld the NLRB's refusal to disclose witness statements prior to a ULP hearing, in the context of a request for such statements under the Freedom of Information Act. *Id.* at 216. The Supreme Court reasoned that providing the statements would interfere with the NLRB's enforcement proceedings and allow witness intimidation. *Id.* at 236–43; *see also id.* at 237 n.16 (collecting cases upholding Board's prehearing discovery process). As only the Supreme Court can overrule its own precedent, *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997), this Court must reject Waffle House's implicit call to overrule *Robbins Tire*. Mem. 13 n.4.

Moreover, in *Carolina Food*, the Fourth Circuit considered a similar due process challenge to the agency's subpoena process and found it "without merit," 81 F.3d at 512, as "the ALJ will give [the employer] an adequate and meaningful opportunity to examine" the NLRB's evidence during trial. *Id.* at 513. Waffle House perceives an unfairness, citing the possibility that

---

[21] If Waffle House could somehow be understood to challenge a purported combination of adjudicatory and prosecutorial functions within the NLRB, the argument would proceed from a mistaken premise. The General Counsel, independent of the Board, has "final authority" to prosecute NLRA violations. 29 U.S.C. § 153(d); *see George Banta Co., Inc. v. NLRB*, 626 F.2d 354, 356 (4th Cir. 1980).

[22] *See United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) ("activities of executive officers may take legislative and judicial forms, but they are exercises of . . . the executive Power, for which the President is ultimately responsible") (cleaned up); *Bowsher v. Synar*, 478 U.S. 714, 733 (1986) ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.").

an employer-issued subpoena can generate ULP liability if found to coerce or interfere with employees' Section 7 activities. Mem. 13; *see* above at 26 n.19. But it has long been "settled that Section 7 of the Act gives employees the right to keep confidential their union activities." *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (Kavanaugh, J.) (citing *Guess?, Inc.*, 339 NLRB 432, 434 (2003)). Waffle House's unrealized concerns with how those principles may apply to a hypothetical discovery setting does not make a due process violation.

Finally, neither ALJs nor Board Members have a demonstrable conflict of interest creating a due process deprivation. Waffle House posits, unpersuasively, that the NLRB's ALJs have an inherent conflict of interest because the ALJ "is part of, and paid by, the same agency bringing the proceedings" [Mem. 14], and that Waffle House will not receive a fair proceeding here because Members Prouty and Wilcox worked for SEIU locals before their appointments. Mem. 13–15. As a general matter, "[t]here is a strong and firm presumption that government officials . . .  perform their functions without bias." *NLRB v. Ohio New & Rebuilt Parts, Inc.*, 760 F.2d 1443, 1450 (6th Cir. 1985). As the Fourth Circuit has recognized in the context of state-level executive officials, "[a]dministrative decisionmakers, like judicial ones, are entitled to a presumption of honesty and integrity," overcome only by "a showing of bias stemming from an extrajudicial source." *Morris v. City of Danville, Va*., 744 F.2d 1041, 1044 (4th Cir. 1984). The Fourth Circuit has gone on to state that the NLRB's "structure ensures sufficient independence of ALJs to conduct hearings fairly, especially when they are subject to Board review and judicial review." *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 495 (4th Cir. 2011). The party asserting bias "bears the burden of establishing" it. *Doolin Sec. Sav. Bank, F.S.B. v. FDIC*, 53 F.3d 1395, 1406 (4th Cir. 1995) (cleaned up).

Waffle House has not made any plausible showing of bias by the NLRB's ALJs, instead relying upon their employment by the agency. Since this characteristic is true of every ALJ at every agency, it cannot "abrogate the presumption of honesty and integrity of administrators who serve as adjudicators." *Id.* at 1407. As *Doolin* explained, "[p]resumably all agencies inherently have some level of institutional bias, but such an interest does not render all agencies incapable of adjudicating disputes within their own proceedings given the strong public interest in effective, efficient, and expert decisionmaking in the administrative setting." *Id.* (cleaned up).

In any event, the NLRA specifically protects ALJ neutrality and independence. *See* 29 U.S.C. §§ 153(d) (General Counsel "shall exercise general supervision over all attorneys employed by the Board (other than administrative law judges . . .)" 154(a) ("No [ALJ's] report shall be reviewed, either before or after its publication, by any person other than a member of the Board or his legal assistant, and no [ALJ] shall advise or consult with the Board with respect to exceptions taken to his findings, rulings, or recommendations."). These safeguards undercut Waffle House's bias claim against ALJs. *See Doolin*, 53 F.3d at 1407 ("[S]tatutory restrictions placed on administrative adjudicators" can "support a finding that a dispute resolution mechanism is not institutionally biased.").

Waffle House claims that Board Member Prouty and Wilcox have a conflict of interest that makes a fair trial impossible [Mem. 14–15], relying upon their pre-appointment employment by locals of SEIU—SEIU Local 32BJ and SEIU Local 1199, respectively [*see* Compl. ¶¶ 10, 12]. Though Waffle House has not yet sought their recusal here (since it is not yet before the Board), parties in other cases have made the same recusal argument and received due consideration of those arguments. *See, e.g.*, *SJT Holdings, Inc.*, 372 NLRB No. 82, 1 n.1 (2023) (ruling on recusal motion in consultation with the Board's Designated Agency Ethics Official). In

*SJT*, Member Prouty declined to recuse himself, explaining, "SEIU Local 32BJ is not a party or the representative of a party to this case, and no former client of Member Prouty is or represents a party to this case." *Id.* Member Prouty further relied upon case law holding that international unions and local affiliates are independent legal entities. *Id.* (citing, among other cases, *1621 Route 22 W. Operating Co., LLC v. NLRB*, 725 F. App'x 129, 136 (3d Cir. 2018)). Other decisions have adopted similar reasoning. *See In re Gen. Teamsters, Warehousemen & Helpers Union, Loc. 890*, 265 F.3d 869, 874–75 (9th Cir. 2001); *SEIU, Nurses All., Loc. 121RN*, 355 NLRB 234, 242–43 (2010) (collecting cases and discussing recusal obligations of Board).

For all these reasons, Waffle House is unlikely to succeed on its claims that the Agency has violated its due process rights.

## II.    **Waffle House failed to establish that it will experience any irreparable harm.**

To obtain a preliminary injunction, Waffle House must carry its burden of making a "clear showing that it will suffer an immediate irreparable harm" absent the relief. *Direx Israel*, 952 F.2d at 812, 815 (cleaned up). "[W]here the harm is admittedly not present or immediate but merely problematic, conditioned on possible future events," the court should "dismiss [] the motion for preliminary relief because the plaintiff failed to establish that the denial would result in present irreparable harm." *Id.* at 816.[23]

As discussed above, Waffle House has failed to allege any causal harm from its removal-protection claims. That alone constitutes strong evidence that Waffle House cannot establish that the challenged removal protections irreparably harm it. *See YAPP*, 2024 WL 4489598, at *3.

---

[23] The Fourth Circuit has held that in the context of an alleged constitutional violation, the irreparable harm factor "is 'inseparably linked' to the likelihood of success on the merits." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Because Waffle House is unlikely to succeed on the merits for the reasons discussed above, it is not entitled to any presumption of irreparable harm.

As for Waffle House's Seventh Amendment claim, because the NLRB complaint does not specifically request the asserted "legal" remedies of which Waffle House complains, this entirely speculative claim cannot support the extraordinary remedy of a preliminary injunction. *See Kadel v. Folwell*, No. 1:19CV272, 2022 WL 11166311, at *5 (M.D.N.C. 2022) ("[S]peculative and abstract injury" cannot "be the basis for [an] 'extraordinary remedy.'"). Moreover, Seventh Amendment claims can be "fully rectified by the final judgment after trial" such that any "harm" is not irreparable. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019). If a reviewing court found a Seventh Amendment problem with certain remedies, it would void those remedies[24] and thus "the harm resulting from the denial of a jury trial can be remedied on appeal." *Ponte*, 2024 WL 4730602, at *8.[25]

Similarly, as described above, Waffle House's due process claims are too unsubstantiated and speculative to warrant relief. Put simply, "the required irreparable harm must be neither remote nor speculative, but actual and imminent." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002). Waffle House's due process claims fail that test and may be fully remedied by a reviewing court, which has the power to decline enforcement of any Board order.

Waffle House argues that *Axon* essentially makes proof of irreparable harm unnecessary. Mem. 15–16. Several circuit courts have expressly rejected that argument, finding that *Axon* did not address injunctive relief or irreparable harm but instead the narrow question of jurisdiction

---

[24] *See, e.g.*, *Tull*, 481 U.S. at 427 (remanding after bench trial upon finding Seventh Amendment violation); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 37, 64–65 (1989).

[25] Even if Waffle House could show irreparable harm due to the lack of a jury trial, the appropriate remedy would be—at most—an injunction prohibiting the NLRB from ordering remedies that implicate the right to a trial by jury, not the broad injunction sought here stopping all further action in the underlying administrative proceeding.

over structural constitutional challenges. In *Alpine Securities Corp. v. FINRA*, 121 F.4th 1314,

1335–36 (D.C. Cir. 2024), the court explained: "*Axon* answered a statutory jurisdictional

question . . . . [T]he Court did not speak to what constitutes irreparable harm for . . . a

preliminary injunction." So, *Axon* "does not say that every agency proceeding already underway

must immediately be halted because of an asserted constitutional flaw." *Id.* at 1336; *see also*

*Leachco*, 103 F.4th at 759 (*Axon* is "about jurisdiction"). *Axon*'s observation that the challengers

in that case had a "here-and-now injury" is inapposite. 598 U.S. at 191; *contra* Mem. 15–16. As

explained in *Leachco*, that phrase derives from a portion of *Seila Law* addressing a challenger's

standing to raise removal claims. 103 F.4th at 759 (citing *Seila Law*, 591 U.S. at 212). The

Supreme Court clarified in *Collins*: "What we said about standing in *Seila Law* should not be

misunderstood as a holding on a party's entitlement to relief based on an unconstitutional

removal restriction." 594 U.S. at 259 n.24. This Court should decline Waffle House's invitation

to make the mistake *Collins* warns against, lest injunctions become the rule, not the exception.

Waffle House's citation to *Elrod v. Burns*, 427 U.S. 347, 373 (1976) does not change this

conclusion. Mem. 15. While "the loss of First Amendment freedoms . . . unquestionably

constitutes irreparable injury," the Supreme Court did not find that all constitutional violations

cause per se irreparable harm. 427 U.S. 347, 373 (1976). Some courts, including the Fourth

Circuit, have extended *Elrod* to the Fourth Amendment context. *See, e.g.*, *Leaders of a Beautiful*

*Struggle v. Balt. Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc). But Waffle House has

not cited any cases suggesting *Elrod* is applicable to structural constitutional claims—and this is

for good reason as many courts have rejected this exact argument. *See, e.g.*, *Ass'n of Am.*

*Publishers, Inc. v. Frosh*, 586 F. Supp. 3d 379, 394 (D. Md. 2022) (declining an invitation to

extend *Elrod* to an alleged Supremacy Clause violation because "freedoms guaranteed by the Bill

of Rights" were not at stake); *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017)

(rejecting proposition that "any alleged separation-of-powers injury is by its very nature

irreparable"); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012)

("[E]quitable relief depends on irreparable harm, even when constitutional rights are at stake.").

### III.     The balance of the equities and the public interest factors favor the Board.

Waffle House cannot show that its alleged harm outweighs the harm an injunction would

inflict on the Board, the public, and those not before the court. "[G]reat weight" should be given

to "the fact that Congress already declared the public's interest and created a regulatory and

enforcement framework." *In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340

F.3d 749, 760 (8th Cir. 2003). Through the NLRA, Congress empowered the NLRB to initially

adjudicate and, where appropriate, remedy unlawful labor practices to "safeguard[] commerce

from injury," 29 U.S.C. § 151; *see UAW Loc. 283 v. Scofield*, 382 U.S. 205, 220 (1965), and

protect employees' "fundamental" NLRA right to engage in concerted activities, *Jones &

Laughlin*, 301 U.S. at 33. The effects of an injunction would be especially severe here since the

NLRB's administrative procedures are the sole mechanism for the employees affected by Waffle

House's ULPs to have their NLRA rights enforced and effectuated. *Nathanson v. NLRB*, 344

U.S. 25, 27 (1952). That outcome cannot serve the public interest, especially when Waffle House

may obtain an adequate remedy in a court of appeals if the Board ultimately issues an adverse

decision. *See* above at 3. And if Waffle House's position is accepted, nearly every ULP case

connected to this district will be susceptible to indefinite injunctions. The Court should decline

the invitation to handcuff the NLRB at the expense of employees and the public interest.

Waffle House argues that the NLRB has no valid "interest in an unconstitutional

adjudication process, and 'the public interest favors protecting constitutional rights.'" Mem. 16

(quoting *Leaders of a Beautiful Struggle*, 2 F.4th at 346). This assumes too much, and improperly "collapses the four [preliminary injunction] factors into one," *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024). As discussed above, well-settled law confirms that the NLRB's adjudicative process is constitutional. *See* above at 10–19, 27–31.

## CONCLUSION

Waffle House's motion for a preliminary injunction should therefore be denied.

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD
CONTEMPT, COMPLIANCE, AND SPECIAL
LITIGATION BRANCH
1015 Half St. SE, Washington, DC 20003

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

CHRISTINE FLACK
*Supervisory Attorney*

GRACE L. PEZZELLA
*Attorney*

ARISH ALI
*Attorney*

JAMES O'DUDEN
*Attorney*

JAMES KIRWAN
*Attorney*

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By:     *s/Todd Timmons*
Todd Timmons (#11254)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Phone: (803) 929-3068
Email: Todd.Timmons@usdoj.gov

Local Counsel for Defendants

Dated this 20th day of December, 2024