

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| WAFFLE HOUSE, INC., | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:24-6751-MGL |
| | § | |
| NATIONAL LABOR RELATIONS BOARD, | § | |
| *a federal administrative agency*; JENNIFER | § | |
| ABRUZZO, *in her official capacity as the* | § | |
| *General Counsel of the National Labor* | § | |
| *Relations Board*; LAUREN M. MCFERRAN, | § | |
| *in her official capacity as the Chairman* | § | |
| *of the National Labor Relations Board*; | § | |
| MARVIN E. KAPLAN, GWYNNE A. | § | |
| WILCOX, and DAVID M. PROUTY, *in* | § | |
| *their official capacities as Board Members* | § | |
| *of the National Labor Relations Board*; and | § | |
| JANE DOE, *in her official capacity as an* | § | |
| *Administrative Law Judge of the National* | § | |
| *Labor Relations Board*, | § | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER
GRANTING MOVANT'S MOTION TO INTERVENE
AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Plaintiff Waffle House, Inc. (Waffle House) filed this action for declaratory and injunctive relief against Defendants National Labor Relations Board (the NLRB), a federal administrative agency; Jennifer Abruzzo, in her official capacity as the General Counsel of the NLRB; Lauren M. McFerran, in her official capacity as the Chairman of the NLRB; Marvin E. Kaplan, Gwynne A. Wilcox (Wilcox), and David M. Prouty (Prouty), in their official capacities as Board Members

of the NLRB; and Jane Doe, in her official capacity as an Administrative Law Judge of the NLRB (collectively, Defendants).

Waffle House challenges the NLRB proceeding brought against it as the result of an unfair labor practices (ULP) charge by Service Employees International Union (the Union). Waffle House avers the NLRB proceeding lacks basic due process protections in contravention of the Fifth Amendment (the Fifth Amendment claims) and violates its right to a jury trial under the Seventh Amendment (the Seventh Amendment claim). Further, Waffle House contends the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–69, unconstitutionally insulates NLRB board members and ALJs from removal by the President (the removal claims).

Pending before the Court are the Union's motion to intervene and Waffle House's motion for a preliminary injunction. Having carefully considered the motions, the responses, the replies, the record, and the relevant law, it is the judgment of the Court the Union's motion to intervene will be granted, and Waffle House's motion for a preliminary injunction will be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In July 2023, the Union filed a ULP charge against Waffle House, claiming Waffle House violated the NLRA in its response to certain employee-related incidents at Unit 1470 in Columbia, South Carolina. After investigating, the NLRB issued a complaint and notice of hearing formally charging Waffle House with violations of Sections 8(a)(1) and (3) of the NLRA. The hearing is scheduled before an NLRB administrative law judge (ALJ) on February 11, 2025.

Upon receiving the complaint and notice of hearing, Waffle House filed this action, challenging the constitutionality of the NLRB's adjudicative process. Waffle House has since

moved to preliminarily enjoin Defendants from conducting the NLRB proceeding. Defendants opposed the motion, and Waffle House replied.

During the pendency of Waffle House's motion for a preliminary injunction, the Union filed a motion to intervene. Waffle House opposed the motion, and the Union replied.

The Court, having been fully briefed on the relevant issues, will now adjudicate the motions.

## III.    MOTION TO INTERVENE

### A.    *Standard of Review*

Individuals or organizations may seek intervention under Rule 24 in two ways: by right or with the Court's permission. *See* Fed. R. Civ. P. 24(a)(2), (b)(1)(B).

To intervene as a matter of right under Rule 24(a)(2), the proposed intervenor must meet the following requirements: "(1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (citing *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981)). "[L]iberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

### B.    Discussion and Analysis

The Union argues it should be allowed to intervene as a matter of right. Waffle House fails to challenge the timeliness of the Union's motion or its interest in the subject matter of the action. Rather, Waffle Houses contests whether denial of the motion would impair or impede the Union's ability to protect its interest and whether the NLRB adequately represents the Union's interest. The Court will consider each argument in turn.

### 1.    Whether denial of the Union's motion would impair or impede the Union's ability to protect its interests

The Union contends it has "substantial legal interests that could be impaired in this matter" if the Court enjoins the NLRB from adjudicating the ULP charge. The Union's Motion at 14. Specifically, the Union maintains "its members will be left without recourse for Waffle House's unfair labor practices[,]" effectively "embolden[ing] Waffle House in its unlawful retaliation" and preventing employees from exercising their rights under the NLRA. *Id.* at 13–14.

Waffle House, on the other hand, posits the Union has failed to articulate how denial of the motion would impair or impede the Union's ability to protect its interests. Waffle House insists "the disposition of [the Union's motion] will leave the litigation at issue to the NLRB . . . to defend and justify its administrative proceedings and structure." Waffle House's Response at 4. The Court disagrees.

Waffle House requests the Court enjoin the NLRB proceeding and declare the proceeding violative of its constitutional rights. The NLRB proceeding, however, was initiated as the result of the Union's ULP charge. And, the Court's disposition of Waffle House's requests for relief will inevitably impair or impede the Union's interests in the NLRB proceeding, particularly as to declaratory relief. The Court therefore determines the Union has demonstrated its interests will be impaired or impeded by denial of its motion.

4

### 2.     *Whether the Union's interest is adequately represented by the NLRB*

The Union contends the NLRB's statutory duty to enforce public rights is insufficient to protect the Union's private interest in initiating the ULP charge. Specifically, the Union notes "its interest in avoiding the effect a delay in the [NLRB]'s proceedings would have on the relationship between Waffle House and its employees as well as other ongoing organizing efforts[] would not necessarily be advanced by the [NLRB]." The Union's Motion at 15. The Union acknowledges it shares a common objective with the NLRB of adjudicating the ULP charge. But, the Union nevertheless insists its narrow interest in ensuring a swift resolution of the ULP charge may ultimately conflict with the NLRB's broader interest in defending the constitutionality of its administrative process.

Conversely, Waffle House maintains the Union and the NLRB share a common interest of protecting and preserving workers' rights. Waffle House contends any possible disagreements between the Union and the NLRB "over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." Waffle House's Response at 5. And, it insists the Union's concern for expedited resolution is merely a strategic divergence from the NLRB's enforcement interest. Again, the Court disagrees.

Although "a presumption arises that the movant's interest is adequately represented" when it is seeking to intervene on the side of a party pursuing the same result, the movant need not establish "the representation by existing parties will definitely be inadequate in this regard." *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 289 (4th Cir. 2009). Instead, the movant "need only demonstrate that representation of [its] interest may be inadequate. For this reason, the Supreme Court has described the applicant's burden on this matter as minimal." *Id.* (internal quotation marks omitted) (first quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528,

538 n.10 (1972); and then quoting *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991)).  And here, the Union has satisfied its minimal burden.

The NLRB's interest may appear to align with those of the Union at this specific juncture. But, "the government's position is defined by the public interest, [not simply] the interests of a particular group of citizens."  *Feller*, 802 F.2d at 730; *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. AFL-CIO*, *Loc. 283 v. Scofield*, 382 U.S. 205, 221 (1965) ("We find nothing inconsistent in denying the right of a private party to institute a contempt proceeding—where the [NLRB]'s expertness in achieving compliance with orders is challenged—and, on the other hand, in permitting intervention in a proceeding already in the court for decision.").

Indeed, even where the NLRB is "performing [its] duties, broadly conceived, as well as can be expected," a member of the Union "may have a valid complaint about the performance of 'his [or her] lawyer.'"  *Trbovich*, 404 U.S. at 539.  And, "[s]uch a complaint, filed by the member who initiated the entire enforcement proceeding," is "sufficient to warrant relief in the form of intervention under Rule 24(a)(2)."  *Id.*   The Court thus concludes the NLRB inadequately represents the Union's interest.

*****

For all these reasons, the Court will grant the Union's motion to intervene as of right under Rule 24(a)(2).

## IV.    SUBJECT MATTER JURISDICTION

Before analyzing Waffle House's motion, the Court must address the following arguments made by Defendants: (1) the Norris-LaGuardia Act (NLGA), 29 U.S.C. §§ 101–15, prohibits the

6

Court from issuing an injunction in this case; (2) Waffle House lacks standing to bring the Fifth Amendment claims; and (3) the NLRA impliedly precludes the Court's jurisdiction over the Fifth and Seventh Amendment claims.

### A.      Whether the NLGA prohibits the Court from issuing an injunction in this case

#### 1.      Standard of Review

The NLGA "'deprive[s] the courts of jurisdiction to issue an injunction in any case involving or growing out of a labor dispute, except' under specified circumstances and with particular procedural checks." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 356 (2024) (Jackson, J., concurring in part) (quoting *New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 561–62 (1938)).  It defines "labor dispute" to "include[] any controversy . . . concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c).  "The critical element in determining whether the [NLGA] applies [is] whether . . . 'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712 (1982) (second alteration in original) (quoting *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 147 (1942)).

#### 2.      Discussion and Analysis

Although this case presents constitutional challenges to the NLRB's adjudicative process, the Court concludes it nevertheless "grow[s] out of a labor dispute[.]" 29 U.S.C. § 101.

The complaint and notice of hearing in the NLRB proceeding accuse Waffle House of "interfering with, restraining, and coercing employees in the exercise of their rights guaranteed in Section 7 of the [NLRA] in violation of Section 8(a)(1)" and "discriminating in regard to the hire

or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) . . . ."  Complaint & Notice of Hearing ¶¶ 14–15.  Simply put, the NLRB proceeding seeks "to arrange terms or conditions of employment" based on the Union's ULP charge.  29 U.S.C. § 113(c).  And, the relationship between Waffle House and its employees is the matrix of this charge.  The Court is thus convinced the NLRB proceeding constitutes a "labor dispute" for purposes of the NLGA.

The Court is likewise persuaded this case "grow[s] out of" the NLRB proceeding.  29 U.S.C. § 101.

Waffle House's constitutional claims arise out of, are inextricably linked to, and would be nonexistent but for, the NLRB proceeding.  Indeed, the complaint states Waffle House brought "this action for injunctive relief in order to prevent the [NLRB] from pursuing an adjudicatory process against it that violates the United States Constitution and fundamental principles of due process and fair play."  Complaint at 1.  A literal reading of the NLGA, then, appears to prohibit the Court from issuing injunctive relief in this case.

Notwithstanding the Supreme Court's generally broad interpretation of the NLGA, it has recognized exceptions to the statute's anti-injunction provisions "in limited situations where necessary to accommodate the [NLGA] to specific federal legislation or paramount congressional policy." *Jacksonville Bulk Terminals*, 457 U.S. at 708.  And here, the Court is convinced applying such a literal interpretation would fail to accommodate the NLRA.

The NLRA provides, "[w]hen granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the [NLRB], as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by [the NLGA]."  29 U.S.C. § 160(h).  Accordingly, if

Waffle House were to raise these constitutional claims raised before a reviewing court within the confines of section 160, the unambiguous terms of subsection 160(h) would render the NLGA inapplicable.

Here, because Waffle House asserts its claims through a collateral district-court challenge, subsection 160(h) is inapposite. The Court, however, is convinced applying such a literal reading of the NLGA to preclude jurisdiction in this case would circumvent the spirit of subsection 160(h). The Court therefore rejects Defendants' contention it is prohibited from issuing an injunction in this case.

**B.** **_Whether Waffle House has standing to bring the Fifth Amendment claims_**

**1.** **_Standard of Review_**

"Article III of the United States Constitution limits federal courts to resolving actual cases and controversies." *Finlator v. Powers*, 902 F.2d 1158, 1160 (4th Cir. 1990). Thus, "a plaintiff seeking relief in federal court must first demonstrate that [it] has standing to do so, including that [it] has 'a personal stake in the outcome'" of the lawsuit. *Gill v. Whitford*, 585 U.S. 48, 54 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that [it] asserts." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each

element." *Spokeo*, 578 U.S. at 338 (internal quotation marks omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). The Court "view[s] the evidence in the light most favorable to [the plaintiff] and draw[s] all reasonable inferences in [its] favor." *United States v. Phillips*, 883 F.3d 399, 405 (4th Cir. 2018).

### 2.    *Discussion and Analysis*

Waffle House's Fifth Amendment claims can be divided into three categories. First, Waffle House alleges prehearing discovery under the NLRA is "grossly titled in favor of the NLRB" (the prehearing-discovery claim). Complaint ¶ 66. Second, Waffle House contends Wilcox and Prouty have "at the very least the appearance of a conflict of interest sufficient to warrant their recusal" from the NLRB proceeding due to their former "high-ranking positions with the [Union]" (the conflict-of-interest claim). *Id.* ¶¶ 68, 70. Third, Waffle House maintains "[t]he NLRB unconstitutionally combines executive, legislative[,] and judicial authority in one body, violating the separation of powers" (the separation-of-powers claim). *Id.* ¶ 67.

For purposes of the Court's standing analysis, it will assume these claims constitute violations of the Fifth Amendment. *See LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011) ("[I]n assessing plaintiffs' standing, [the Court] must assume they will prevail on the merits of their constitutional claims.").

### a.    *Prehearing-discovery claim*

Waffle House's prehearing-discovery claim avers "[r]espondents in NLRB proceedings are nominally permitted to issue subpoenas for witnesses and documents," but "their ability to do so is subject to oversight and control by the NLRB[,]" and, "in many cases[,] the NLRB has brought independent unfair labor practice charges against respondents who have attempted to utilize the NLRB's subpoena process." Complaint ¶ 66.

Waffle House, however, has failed to allege any instance in which it has sought to utilize the NLRB's subpoena process. Nor has it specified any manner in which the NLRB restricted its ability to do so. Therefore, the Court concludes Waffle House has neglected to demonstrate an injury-in-fact as to the prehearing-discovery claim and thus lacks standing to bring it. *See Nat'l Lab. Rels. Bd. v. Carolina Food Processors, Inc.*, 81 F.3d 507, 513 (4th Cir. 1996) (declining to "remedy a due process violation that has not yet occurred, and which may never come to pass, simply on the strength of [the employer's] assertion that the violation might occur" because the "court is not in the business of righting speculative wrongs").

### b.    Conflict-of-interest claim

Waffle House's conflict-of-interest claim anticipates Wilcox and Prouty will refuse to recuse themselves in the NLRB proceeding given their prior refusal to do so in a separate case involving the Union. This injury is merely conjectural.

Wilcox and Prouty will become involved in the NLRB proceeding only if the parties file objections to the NLRB ALJ's decision and recommended order. 29 U.S.C. § 160. Even assuming the proceeding advances to the NLRB, however, the Court is unable to conclude Wilcox and Prouty's refusal to recuse themselves in a factually distinct case will actually result in their refusal to do so here. Accordingly, under *Carolina Food Processors*, the Court concludes Waffle House also lacks standing to bring the conflict-of-interest claim.

### c.    Separation-of-powers claim

Finally, Waffle House's separation-of-powers claim posits "the NLRB has taken for itself a fundamentally judicial task of overseeing the litigation of parties' private rights" and "interpreting the [NLRA]," both of which fall outside the "legitimate exercise of executive power." Waffle House's Motion at 12. In other words, Waffle House contends the NLRB, in adjudicating

the ULP charge, is subjecting it "to unconstitutional agency authority[.]" *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023) (internal quotation marks omitted).

According to *Axon*, this is "a here-and-now injury . . . . about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* (internal quotation marks omitted) (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 212 (2020)).  Waffle House has thus established an injury-in-fact.

Defendants evidently concede Waffle House's injury is fairly traceable to their challenged conduct and likely to be redressed by a favorable judicial decision.  The Court agrees and therefore concludes Waffle House has standing to bring the separation-of-powers claim.

Accordingly, Waffle House has failed to demonstrate standing to bring the prehearing-discovery and conflict-of-interest claims, but it has established standing to bring the separation-of-powers claim.  The Court will therefore address the parties' remaining arguments as to the Fifth Amendment claims only in terms of the separation-of-powers claim.

### C.    Whether the NLRA impliedly precludes the Court's jurisdiction over the separation-of-powers and Seventh Amendment claims

#### 1.    Standard of Review

District courts generally have "original jurisdiction of all civil actions arising under the Constitution . . . of the United States."  28 U.S.C. § 1331.  "A special statutory review scheme" like the NLRA, however, "may [impliedly] preclude [the Court] from exercising jurisdiction over challenges to federal agency action."  *Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 185 (4th Cir. 2016).

As the Fourth Circuit explained in *Bennett*,

[D]etermining whether Congress has impliedly divested district-court jurisdiction over agency action involves a two-step inquiry.  First, we ask whether Congress's intent to preclude district-court jurisdiction is "fairly discernible in the statutory scheme."  This involves examining the statute's text, structure, and purpose.

> Second, we ask whether [the] plaintiff['s] "claims are of the type Congress intended to be reviewed within this statutory structure." At this second stage, we consider three factors. We focus on (1) whether the statutory scheme "foreclose[s] all meaningful judicial review." We also consider (2) the extent to which the plaintiff's claims are "wholly collateral" to the statute's review provisions, and (3) whether "agency expertise could be brought to bear on the . . . questions presented."

*Id.* at 181 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994)) (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012)); *see Axon*, 598 U.S. at 198 (holding constitutional claims challenging "the structure, or even existence" of the Securities and Exchange Commission (SEC) and Federal Trade Commission (FTC) "are not 'of the type' the [SEC Act and the FTC Act] reach[]" and are thus within the district court's jurisdiction (quoting *Thunder Basin*, 510 U.S. at 212)).

### 2. *Discussion and Analysis*

Like the statute at issue in *Bennett*, the NLRA "includes a comprehensive scheme that provides for judicial review in the appropriate court of appeals, with . . . authority to . . . modify, enforce, or set aside final agency orders in whole or in part, as well as authority to consider new arguments, reject findings of fact, remand to adduce new evidence, and issue stays." *Bennett*, 844 F.3d at 181. *Compare* 15 U.S.C. § 78y (providing a comprehensive scheme for appellate review of SEC actions), *with* 29 U.S.C. § 160(e) (establishing a substantially similar scheme for NLRB actions).

"Moreover, Congress demonstrated it knew how to preserve district-court jurisdiction[,]" as the NLRA, also like the statute under consideration in *Bennett*, "specifically authorizes district courts to exercise jurisdiction over certain actions brought by the agency but not by private parties." *Bennett*, 844 F.3d at 181 (emphasis omitted) (quoting *Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 376 F.3d 239, 243 (4th Cir. 2004)); *see* 29 U.S.C. § 160(j) (empowering the NLRB to petition a district court for temporary injunctive relief while a ULP charge is pending).

Nevertheless, it neglected to preserve such jurisdiction in the context of collateral district-court challenges. *Id.* at 182. The Court thus concludes the text, structure, and purpose of the NLRA evince Congress's intent to deny such challenges.

The first step of the inquiry is thus satisfied as to both the separation-of-powers and Seventh Amendment claims.

Given the fact-intensive analysis required under the second step of the inquiry, the Court will consider the claims individually.

### a.     *Separation-of-powers claim*

Under the first *Thunder Basin* factor, which is the "most important[,]" *Bennett*, 844 F.3d at 183 n.7, the Court determines the NLRA "foreclose[s] all meaningful judicial review" of the separation-of-powers claim. *Thunder Basin*, 510 U.S. at 212–13.

As explained above, the separation-of-powers claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 598 U.S. at 191 (internal quotation marks omitted) (quoting *Seila*, 591 U.S. at 212). Although "[t]hat harm may sound a bit abstract[,]" it is nevertheless "a here-and-now injury" that "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* (quoting *Seila*, 591 U.S. at 212). Simply put, "[a] proceeding that has already happened cannot be undone." *Id.*

The Court thus concludes "[j]udicial review of [the separation-of-powers] claim[] would come too late to be meaningful." *Id.* This aspect of the jurisdictional analysis, though, is distinct from the more detailed preliminary injunction analysis set forth below. *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 757 (10th Cir. 2024). This is especially true given the Court, for purposes of standing only, assumes Waffle House will succeed on the merits of its

14

claims. *See LaRoque*, 650 F.3d at 785 ("[I]n assessing plaintiffs' standing, [the Court] must assume they will prevail on the merits of their constitutional claims.").

Turning to the second *Thunder Basin* factor, the Court also determines the separation-of-powers claim is "wholly collateral" to the NLRA's review provisions. *Thunder Basin*, 510 U.S. at 212.

In alleging the NLRB violates fundamental separation-of-powers principles, Waffle House "challeng[es] the [NLRB's] power to proceed at all" and fails to "object[] to anything particular about how that power was wielded." *Axon*, 598 U.S. at 193. This factor therefore weighs in favor of district-court jurisdiction.

Finally, under the third *Thunder Basin* factor, the Court concludes the separation-of-powers claim falls "outside [the NLRB's] expertise," *Thunder Basin*, 510 U.S. at 212, as "agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise." *Carr v. Saul*, 593 U.S. 83, 92 (2021); *see Axon*, 598 U.S. at 194 ("Axon's constitutional challenge to the combination of prosecutorial and adjudicative functions if of a piece—similarly distant from the FTC's 'competence and expertise.' The [FTC] knows a good deal about competition policy, but nothing special about the separation of powers." (quoting *Thunder Basin*, 561 U.S. at 491)).

Because the *Thunder Basin* factors all weigh in favor of district-court jurisdiction over Waffle House's separation-of-powers claim, the Court rejects Defendants' argument the NLRA impliedly precludes such jurisdiction.

### b.      *Seventh Amendment claim*

Moving to Waffle House's Seventh Amendment claim, the Court concludes the NLRA neglects to "foreclose all meaningful judicial review" of the claim under the first *Thunder Basin*

factor. *Thunder Basin*, 510 U.S. at 212–13. After all, as detailed more fully below, Waffle House is entitled to appellate review of the claim.

The Supreme Court has expressly rejected any argument a ULP charge is legal in nature. *See Nat'l Lab. Rels. Bd. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48–49 (1937) ("[A ULP] case is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law. It is a statutory proceeding.").

Moreover, any order awarding monetary relief or traditional common law damages again Waffle House will remain unenforceable unless and until the NLRB petitions the circuit court for enforcement. 29 U.S.C. § 160(e). Even then, Waffle House is authorized to seek appellate review of any order by which it is aggrieved, thus permitting the circuit court to modify or set aside the order in whole or in part. *Id.* § 160(f).

For these reasons, the alleged Seventh Amendment injury fails to constitute "a here-and-now injury" that "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Axon*, 598 U.S. at 191 (quoting *Seila*, 591 U.S. at 212). The first *Thunder Basin* factor therefore bodes against district-court jurisdiction.

Under the second *Thunder Basin* factor, the Court is likewise unconvinced the Seventh Amendment claim is "wholly collateral" to the NLRA's review provisions. *Thunder Basin*, 510 U.S. at 212.

Unlike the separation-of-powers claim, the Seventh Amendment claim neither seeks to "challeng[e] the [NLRB's] power to proceed at all" nor to "object to the [NLRB's] power generally[.]" *Axon*, 598 U.S. at 192–93. Rather, it contests actions Waffle House anticipates the NLRB will take and objects to the uncertain manner in which it supposes the NLRB will wield its power. Any remedy-based issues, however, are intricately intertwined with matters the NLRB

will adjudicate in its action to enforce the NLRA.  Thus, the Seventh Amendment claim can be fairly categorized as "wholly collateral" to the NLRA's review provisions.  *Thunder Basin*, 510 U.S. at 212.

Finally, as per the third *Thunder Basin* factor, the Court is unable to conclude the Seventh Amendment claim—which differs in material respects from the structural constitutional challenge brought within the separation-of-powers claim—falls "outside [the NLRB's] expertise."  *Thunder Basin*, 510 U.S. at 212.

The "whole gamut of remedies" needed to implement the NLRA's policies is "peculiarly a matter for administrative competence[.]"  *Phelps Dodge Corp. v. Nat'l Lab. Rels. Bd.*, 313 U.S. 177, 194 (1941).  Indeed, "courts must not enter the allowable area of the [NLRB]'s discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy."  *Phelps Dodge*, 313 U.S. at 194.  This is certainly true where, as here, the remedies sought in the NLRB proceeding are equitable, an award of monetary relief or common law damages is merely speculative, and any such award would be subject to appellate review and unentitled to absolute deference.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394–95 (2024).

Accordingly, the *Thunder Basin* factors indicate the NLRA impliedly precludes the Court's jurisdiction over Waffle House's Seventh Amendment claim.

*****

For all these reasons, the Court holds it has subject matter jurisdiction to review Waffle House's separation-of-powers claim, but it is without subject matter jurisdiction to consider Waffle House's Seventh Amendment claim.  The Court will therefore proceed to consider the merits of the separation-of-powers claim, as well as the unchallenged removal claims.

## V.    PRELIMINARY INJUNCTION

### A.    *Standard of Review*

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It should issue only when the plaintiff can "establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Id.* at 20.

The burden is on the party seeking injunctive relief to show it is entitled to such relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 443 (1974). "[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated and remanded on other grounds*, 559 U.S. 1089 (2010).

### B.    *Discussion and Analysis*

As the party seeking preliminary injunctive relief, Waffle House must first establish it is likely to succeed on the merits of its claims. For the reasons set forth below, the Court determines Waffle House has failed to do so and is thus unentitled to preliminary relief.

#### 1.    *Separation-of-powers claim*

Again, the separation-of-powers claim arises from Waffle House's contention "the NLRB has [unconstitutionally] taken for itself a fundamentally judicial task of overseeing the litigation of parties' private rights" and "interpreting the [NLRA]," both of which fall outside the "legitimate exercise of executive power." Waffle House's Motion at 12.

Regarding the NLRB's role in "overseeing the litigation of parties' private rights[,]" the Supreme Court has acknowledged "[m]ost administrative agencies, like the [NLRB], are granted . . . the power to hear and adjudicate particular controversies, that is quasi-judicial power."

*Nat'l Lab. Rels. Bd. v. Wyman-Gordon, Co.*, 394 U.S. 759, 770 (1969) (Black, J., concurring in the result).  And, "[i]t is well established that due process rights are not violated simply by the combination of the investigative, prosecutorial, and adjudicative functions in one agency." *Marshall v. Cuomo*, 192 F.3d 473, 484 (4th Cir. 1999); *see Withrow v. Larkin*, 421 U.S. 35, 58 (1975) ("[T]he combination of investigative and adjudicative functions does not, without more, constitute a due process violation.").

Moreover, as to the NLRB's interpretations of the NLRA, the Court disagrees with Waffle House's claim this is an illegitimate exercise of executive power.

Although the NLRB's interpretations of the NLRA are unbinding on the courts, the NLRB nevertheless "constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Loper Bright*, 603 U.S. at 394 ("The [Administrative Procedure Act] . . . incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions.  In exercising such judgment, though, courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes.").

Indeed, the NLRB's interpretations "may be especially informative 'to the extent [they] rest[] on factual premises within [the agency's] expertise.'"  *Loper Bright*, 603 U.S. at 402 (alteration in original) (quoting *Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.*, 464 U.S. 89, 98 n.8 (1983)); *see Nat'l Lab. Rels. Bd. v. Interbake Foods, LLC*, 637 F.3d 492, 497 (4th Cir. 2011) ("[T]he NLRA carefully recognizes the appropriate divide between the administrative authority to conduct hearings and issue orders and the exclusively judicial power of Article III judges to enforce such orders.").

19

For these reasons, the Court determines Waffle House is unlikely to succeed on the merits of its separation-of-powers claim, and the Court will deny Waffle House's motion for preliminary injunction as to this claim.  *See Real Truth About Obama*, 575 F.3d at 346 ("[A]ll four requirements must be satisfied.").

### 2.     *Removal claims*

Waffle House's removal claims stem from its assertion the NLRA impermissibly shields NLRB board members and ALJs from removal by the President.  Even if the Court were to assume the NLRA's limitations on removal are unconstitutional, the Court nevertheless concludes Waffle House has failed to establish such limitations "inflict[ed] compensable harm."  *Collins v. Yellen*, 594 U.S. 220, 259 (2021).

"[T]he unlawfulness of [a] removal provision does not strip [an officer] of the power to undertake the other responsibilities of his [or her] office[.]"  *Collins*, 594 U.S. at 258.  Rather, where a plaintiff is unable to establish a "constitutional defect in the statutorily prescribed method of appointment to that office[,]" it is entitled to relief only if the unlawful removal provision "inflict[ed] compensable harm."  *Id.* at 259–60.

Like the employer in *YAPP USA Automotive Systems, Inc. v. National Labor Relations Board*, No. 24-1754, 2024 WL 4489598, at *3 (6th Cir. Oct. 13, 2024), Waffle House has failed to assert the NLRA's removal scheme either prevented superior officers from removing NLRB board members and ALJs when they attempted to do so or altered the behavior of NLRB board members and ALJs prior to the NLRB proceeding.  "Nor has [Waffle House] demonstrated that, 'but for the allegedly unconstitutional removal provisions, the [NLRB board members and ALJs] would have been removed, the [NLRB] proceedings against it would not be occurring, or the proceedings would be different in any way."  *Id.* (quoting *Leachco*, 103 F.4th at 757).

Accordingly, the Court determines Waffle House is unlikely to succeed on the merits of its removal claims. Because "all four requirements must be satisfied[,]" *Real Truth About Obama*, 575 F.3d at 346, the Court will deny Waffle House's motion for preliminary injunction as to this claim, too.

## VI.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court the Union's motion to intervene is **GRANTED**, and Waffle House's motion for a preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

Signed this 10th day of February 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

21